7321.　WEIMER *v.* SAVANNAH UNION STATION COMPANY.

Under the plaintiff's allegations, he was not authorized to pass through the railway station of the defendant for the purpose of mailing letters on a mail-train in the station; and his arrest by the station policeman at the instance of the gateman, when he passed through the gate of the station on his way to the mail-train, after he had requested them to allow him to go through the gate to mail his letters and they had refused him permission to do so, did not give him a right of action against the defendant, although he alleged that it was customary for people generally to go to the mail-train for the purpose of mailing letters, and that, so far as the defendant by its rules attempted to prevent others than passengers from passing through the gates of the station, the rules were not binding, since they were not impartially enforced, and persons who were not passengers and who "stood on the same footing" with him were permitted by the gatekeeper to pass through the gates.

DECIDED SEPTEMBER 21, 1916.

Action for damages; from city court of Savannah—Judge Davis Freeman. February 9, 1916.

*Morris H. Bernstein,* for plaintiff, cited: Bell *v.* Houston &c. R. Co., 132 La. 88 (60 So. 1029, 43 L. R. A. (N. S.) 740); Chicago &c. R. Co. *v.* Parkinson, 44 Pac. 615; Atchison &c. Ry. Co. *v.* Jandra, 44 Pac. 615; 33 Cyc. 762 (b), and notes.

*Anderson, Cann, Cann & Walsh,* for defendant, cited: *Fluker v. Ga. R. Co.,* 81 *Ga.* 461, and cases cited supra.

HODGES, J. The petition alleges that the defendant operated and controlled a certain railroad depot in the City of Savannah, and the terminals connected therewith; that the plaintiff had occasion, in the conduct of his private business, to have two letters leave Savannah on a certain train of the Atlantic Coast Line Railway Company, which carried mail; that in order to have the letters leave on this particular train he went to the Union Station, from which the train was to leave, and proceeded to the office of the station-master for the purpose of obtaining a pass to get through the gate at the station; that the station-master's office was closed, and he approached the gatekeeper and stated that he had two letters which he desired to mail on that train and wished permission to go to the train and deposit the letters; that the gatekeeper told him that he would not be permitted to pass through the gate without obtaining permission from the station-master, and he informed the gatekeeper that the office of the station-master was closed. It is alleged that he made three trips to the station-master's office and found it closed, and returned to the gate and inquired of a railroad police officer if there was not some way in which the letters could be mailed for him, explaining that it was very important that the letters should leave on that train, and that his only purpose was to go through the gate to mail the letters, but the officer refused to permit him to pass through the gate; that he again stated this to the gatekeeper, but permission to pass through the gate was refused him; that just as the train was about to pull out he observed several ladies, who were not passengers, go through the gate without passes or permission, and that while the gatekeeper was speaking to some other person he quietly walked through the gate for the purpose of mailing the letters; that when he had gone twenty or thirty feet the gatekeeper ordered the said police officer of the defendant to place him under arrest, and the officer unlawfully assaulted him and placed his hand upon him, and unlawfully, willfully, and maliciously, and without

any warrant or other process, and without probable cause, put him under arrest, and ordered the police-wagon; that he explained to the police officer that he was a reputable merchant of the city and had lived there for some time, and requested that he be put on the docket or served with a subpœna, without humiliating him by forcing him to ride in a public patrol-wagon, but the request was refused; that he was taken to the police headquarters and was there detained until he explained the matter to the officer in charge, who immediately released him on his own recognizance, and that on the following morning, in the police court, he was promptly acquitted; that he was greatly pained, hurt, and humiliated, and held up to the scorn and ridicule of people generally, in being thus unlawfully accosted and driven through the public streets in the police wagon to the police barracks and there detained; and that by reason of the facts alleged, he was damaged by the defendant, its said agents and employees, in the sum of $1,000.

To the petition as filed a demurrer was interposed, whereupon the plaintiff offered amendments, in which it was alleged that the train upon which he intended to mail his letters carried a mail-car, and that it was a part of the business of this train to transport the mail under the control of the post-office department of the United States; that it was customary for people generally to go to this mail-train, as well as all other mail-trains, for the purpose of mailing letters, and that the public was invited, by the conduct of the post-office authorities and of the railroads having charge of the transportation of mail to deposit mail at said cars, and that the defendant knew of the facts; that in so far as the defendant attempted by rule to regulate the use of its gates to the trains and to prevent any persons except passengers from passing through the gates, such regulations were not binding upon him, for the reason that they were not impartially enforced, because people who were not passengers were frequently allowed to go through the gates, and, just before he was refused permission to go through the gates, others who were not passengers or employees of the defendant or of any of the railroads, and who stood on the same footing with him, were permitted by the gatekeeper to pass through the gates while he was refused admission. In another proposed amendment it was alleged that the Atlantic Coast Line Railroad Company, one of the railroads that uses the terminals and stations of the de-

fendant, was under contract with the government of the United States to transport mail on this particular train; that it was doing so according to the laws of the United States, that it had a mail-car attached to the train, that the clerk handling the mail did so in accordance with the rules and regulations of the post-office department; that under instructions from the said department it was the duty of the mail clerk to receive any mail presented to him by the public, and that the plaintiff was making his way through the defendant's station by a recognized way of approach, and, in fact, the only way to reach the mail-car, for the purpose of mailing his letters, and thereby transact business with the defendant. The court rejected the amendment offered and sustained the demurrer to the petition as filed; and plaintiff excepted.

The very nature of the ownership of property involves a right of absolute dominion and control of it, and this applies to a corporation as well as to a private individual, unless the corporation owes to the plaintiff some duty. Railroad land "the railroad companies may inclose by fences if they choose to do so, and exclude any and all persons whomsoever. Their dominion over the same is no less complete or exclusive than that which every owner has over his property. If they do not choose to erect fences and make enclosures, they may, by mere orders, keep off intruders, and they may treat as intruders all who come to transact their own business with passengers or with persons other than the companies themselves." *Fluker* v. *Georgia Railroad Co.,* 81 *Ga.* 461 (8 S. E. 529, 2 L. R. A. 843, 12 Am. St. R. 328). This opinion, delivered by Chief Justice Bleckley, seems to be controlling, so far as the law of Georgia is concerned, as to the alleged right of a private citizen to enter in and upon the property of a corporation for the purpose of transacting his private business. The case cited above is followed in *Kates* v. *Atlanta Baggage & Cab Co.,* 107 *Ga.* 636 (34 S. E. 372, 46 L. R. A. 431), in which Justice Little says: "This court in the case of *Fluker* v. *Georgia Railroad Co.,* 81 *Ga.* 461, recognized the distinction which exists between the duty which a railroad company owes to the public and the private right to regulate and control its property. . . As in our opinion. this case goes very far in determining the legal questions now presented, we freely refer to the opinion rendered by Chief Justice Bleckley as sound in principle, and authority binding upon us.

. .    This is the exposition of the law in force in this State, from which, as we believe, there has been no departure. . .  The case [*Fluker* v. *Georgia Railroad Co:,* supra] clearly rules the principle that a railroad company has the right to exclude from its premises persons going thereon for the purpose of transacting private business; and a second proposition is equally as clearly stated to be, that the privilege of doing so may be granted to one and refused to another without violating any principle of law which governs the conduct of carriers and regulates their duty to the public."

The defendant in this case was a corporation, and controlled what is known as the union depot and the terminals connected therewith, in the city of Savannah.  The right of property guaranteed by the constitution of the State presupposes absolute and entire control by the owner over his own property, and the only limitation that can be placed upon this rule, as to a corporation of this kind, is that the corporation shall not discriminate against any of the public in the exercise of its corporate franchises.  In the case before the court the petition shows that the plaintiff was upon the premises of the terminal company not for the transaction of any business with the terminal company, nor for the purpose of transacting any business with any railroad company connected with the terminal company by contract.  The petition sets out no allegation in support of the conclusion of the pleader that the plaintiff had business with which the Atlantic Coast Line Railroad Company was connected.  It is true that the pleader alleged that the Atlantic Coast Line Railroad Company operated a mail-car under the contract, rules, and regulations of the postal authorities of the United States, but no privity is shown between the postal department and the terminal company.  The allegations in the petition, even in connection with the proposed amendment, simply pleaded a conclusion, without alleging any facts upon which it could be based.  The rules of the postal authorities are not set forth in the petition, and no facts are alleged showing that the defendant had knowledge of such regulations.  No contract between the post-office department and the terminal company is pleaded, nor any contract between the Atlantic Coast Line Railroad Company and the terminal company, showing that the terminal company agreed to allow any one as a citizen to use its property in the transaction of his private affairs.  Clearly such

allegations would be necessary, to withstand a general demurrer. to the petition, even if the presiding judge had allowed the proposed amendments. If the rule laid down by Chief Justice Bleckley in the case of *Fluker* v. *Georgia Railroad Co.,* supra, is a correct statement of the law in Georgia with reference to the dominion of a railroad corporation over its own property as against an individual in the conduct of its affairs, certainly the rule would apply with greater force to a corporation owning, operating, and controlling a union depot and terminal facilities connected therewith, used by railroad companies, especially when it does not appear that the terminal company had any contract with the government to permit persons to enter in and upon its property for the purpose of mailing letters in the conduct of their private affairs. In this case it appears from the petition that the plaintiff knew that he had to have a permit, for it is set forth that he applied three times at the office of the station-master, and to the gatekeeper and to a police officer, requesting permission to enter upon the premises of the company, and when refused by those in authority he undertook to intrude, and was properly ejected, and in his ejection it does not appear that any officer, agent, or servant of the terminal company did anything not necessary for that purpose. This court is of the opinion that the learned judge who passed upon this question did not err in rejecting the proposed amendments, and in sustaining the general demurrer to the petition.                                    *Judgment affirmed.*