State ex rel. Burr et al. v. J. T. Co. et al.—Syllabus.

THE STATE OF FLORIDA, *ex rel.* R. HUDSON BURR, NEWTON A. BLITCH AND A. S. WELLS, AS RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Relators,* v. JACKSONVILLE TERMINAL COMPANY, A CORPORATION, AND J. L. WILKES, GENERAL MANAGER, *Respondents.*

Opinion Filed August 15, 1921.

1. Authority not granted by a corporate charter or by the law, can not be conferred by an order of the Railroad Commissioners.

2. Where it does not appear that a corporation has authority under the corporate charter or by the law to exercise a function commanded by an alternative writ of mandamus, the writ will be quashed.

A case of Original Jurisdiction.

Writ quashed.

*James E. Calkins,* for Relators;

*Jno. E.* and *Julian Hartridge,* for Respondents.

*Reynolds & Rogers* and *C. D. Towers, Jr.,* as *Amici Curiae.*

WHITFIELD, J.—The alternative writ alleges "That said Jacksonville Terminal Company is a company operating a passenger terminal or union depot in the City of Jacksonville, Florida, for the purpose of receiving, delivering or transferring passenger traffic to and from the City of Jacksonville, Florida, or to or from one or more of the railroads operating its train service into said terminal or

depot from or to any other such railroad or railroads;"
that the Railroad Commissiners "found that the practice
of the Jacksonville Terminal Company of honoring for
identification purposes the baggage claim checks issued
by the Jacksonville Baggage & Cab Company, and in re-
fusing to honor for identification purposes the baggage
claim checks issued by other draymen and transfer com-
panies to passengers and the traveling public, actually
results and operates as. an unreasonable and unjust dis-
crimination against persons or pasengers sending their
baggage to said union depot by draymen or transfer com-
panies other than the said Jacksonville Baggage & Cab
Company; and that said discrimination should be abated
for the good of the traveling public; and that they should,
for the good of the traveling public, make and promulgate
a rule regulating the reception of baggage for transporta-
tion by railroad at said union depot in the City of Jack-
sonville, Florida; and thereupon, on said 5th day of May,
A. D. 1921, said Railroad Commissioners made and entered
their certain Order No. 724, in which order are the words
and figures following:

"5. And now on this day the said matter coming on for
further and final consideration before said Commissioners
in regular session at their office in the City of Tallahassee,
Florida, and it appearing to said Commissioners, from the
evidence, adduced at said hearing, that the practice of
the Jacksonville Terminal Company of honoring the bag-
gage claim checks issued by the Jacksonville Baggage &
Cab Company, and in refusing to honor baggage claim
checks issued by other persons or companies engaged in
the transfer business at Jacksonville, Florida, actually
results and operates as an unreasonable and unjust dis-
crimination against persons or passengers sending their

baggage to the union station of the Jacksonville Terminal Company by persons or companies other than the said Jacksonville Baggage & Cab Company; and it further appearing to said Railroad Commissioners that said discrimination should be abated for the good of the traveling public; and it further appearing to said Commissioners from the evidence adduced at said hearing, that they should for the good of the traveling public, make and promulgate a rule regulating the reception of baggage for transportation by railroad at the union station of the Jacksonville Terminal Company in the City of Jacksonville, Florida.

"6. Wherefore it is considered, ordered and adjudged by the Railroad Commissioners of the State of Florida, that the said Jacksonville Terminal Company be and it is hereby notified and required to cease and desist from practicing the unjust and unreasonable discrimination in this order found to exist, by fully complying with the rule made and promulgated in Section 7 of this order for the reception of baggage at said union depot in Jacksonville, Florida.

"7. And it is further considered, ordered and adjudged by the Railroad Commissioners of the State of Florida that the Jacksonvile Terminal Company, for the good and convenience of the traveling public, shall, upon application to it, provide and issue for reasonable charge and in sufficient numbers to all persons and companies duly licensed by law to do a transfer business in the City of Jacksonville, Florida, triplicate stub form baggage claim checks in serial numbers for use in the transfer and delivery of baggage to the union station of the Jacksonville Terminal Company at Jacksonville, Florida, the first and last stubs of such baggage claim checks to contain suitable blank lines for filling in the name of the baggage transfer company or person conveying the baggage to the said station, the second

or middle stub to contain suitable blank lines for the entry of gross weight of baggage, date and hour of receipt, and condition of baggage when received, all of said stubs to bear the same number; and the said Jacksonville Terminal Company shall receive at its said station for transportation all baggage to which there is attached together the first and middle stubs of such baggage claim check, and on the receipt of such bagage in order to expedite the checking of same the middle stub shall be removed from such baggage and delivered to the checking clerk at the checking window, which middle stub shall be the checking clerk's authority for checking the passenger's baggage, and upon the presentation of the duplicate claim check bearing the same number, accompanied by a proper railroad ticket, to the said Jacksonville Terminal Company at its said union station, the said Jacksonville Terminal Company shall without further identification of baggage check such baggage to its destination.

"12. That said respondents have disregarded and failed to obey and observe said Order No. 724, as above set forth, and are still in default therewith, in that said respondents have failed and refused to provide and issue, on application to it, for a reasonable charge and in sufficient numbers, to all persons and companies duly licensed by law to do a transfer business in the City of Jacksonville, Florida, triplicate stub form baggage claim checks in serial numbers for use in the transfer and delivery of baggage to said union depot of the Jacksonville Terminal Company at Jacksonville, Florida, in the form prescribed in and by Section 7, of said Order No. 724, and in this respect said respondents are violating, disregarding and refusing to obey Section 7, of said Order No. 724.' ''

The command of the alternative writ is that the Jack-

sonville Terminal Company, a corporation, and ·J. ·L. Wilkes, its General Manager, do "provide and issue, on application to it, for a reasonable charge and in sufficient numbers, to all persons and companies duly licensed by law to do a transfer· business in the City of Jacksonville, Florida, triplicate stub form baggage claim checks in serial numbers for use in the transfer and delivery of baggage to the union depot of the Jacksonville Terminal Company at Jacksonville, Florida, the first and last stubs of such baggage claim checks to contain suitable blank lines for filling in the name of the baggage transfer company or person conveying the baggage to the said union depot, the second or middle stub to contain suitable blank lines for the entry of gross weight of baggage, date and hour of receipt, and condition of baggage when received, all of such three stubs to bear the same number, as prescribed in and by Section 7, of said Order No. 724.

"To receive at said union depot for transportation all baggage to which there is attached together the first and middle stubs of such baggage claim check, and on the receipt of such baggage to remove such middle stub from such baggage and deposit the same with the checking clerk at the checking window of said union depot, and, upon or after receipt of such baggage, on presentation at the checking window of said depot of the duplicate claim check bearing the same number as said middle stubs so deposited, accompanied by a proper railroad ticket, to check such baggage to its destination without further identification of baggage, as required in and by paragraph No. 7, of said Order No. 724.

"And in all things to fully observe and comply with said Order No. 724 of the said Railroad Commisioners of the State of Florida.'

If it be conceded that the Railroad Commissioners have authority to make effective a specific order in detail like the one here sought to be enforced, it is not alleged that the Terminal Company is authorized by its charter to issue baggage claim checks to baggage transfer agents, or that the Terminal Company as the agent of the several railroad companies entering the terminal depot, is authorized to check baggage to its destination, or that the Terminal Company is in fact issuing baggage claim checks to any baggage transfer agent or is checking baggage to its destination as the agent of the railroad companies, therefore, a right to the mandatory writ as framed does not appear.

If the purpose of the writ is to prevent an existing discrimination as to the traveling public resulting from the issuance by the Terminal Company of baggage claim checks to one transfer agent and not to others, the writ does not command the Terminal Company to issue checks to all transfer companies on the same or like conditions that are now observed in issuing such checks to the one transfer company; but the writ commands the respondents to "provide and issue, on application to it, for a reasonable charge and in sufficient numbers, to all persons and companies duly licensed by law to do a transfer business in the City of Jacksonville, Florida, triplicate stub form baggage claim checks in serial numbers," &c.

The Railroad Commissioners, within their authority, for the correction of abuses and to prevent unjust discrimination and excessive charges, may supervise and regulate the operations of common carrier corporations; but orders of the Railroad Commissioners do not confer upon such corporations any powers that are not granted by their charters or by the law. If a particular corporate function is not authorized by the corporate charter or by the law, it cannot

be enforced as a duty; and the powers of corporations ordinarily are matters of allegation and proof.

The alternative writ is quashed.

BROWNE, C. J., AND TAYLOR, J., concur.

ELLIS AND WEST, J. J., dissent.

BROWNE, C. J., Concurring.—In checking baggage the Jacksonville Terminal Company is the agent of the railroad company which receives it for transportation.

It is the railroad that contracts to transfer the baggage to its destination, and the check is an acknowledgment and admission by the railroad that it has received the baggage. Before it acknowledges having received it, it has the right to be satisfied on that point, and also to require satisfactory proof that the baggage sought to be checked belongs to the ticket holder, or is in his possession or under his control. The railroad may accept the bare word of the ticket holder that a certain trunk is his, but in doing so it assumes all liability. It accepts the word of the ticket holder in lieu of proof. As to another ticket holder, the railroad may require proof, of the ownership of or authority over the trunk before issuing a check for it and assuming consequent liability. The check is the acknowledgment that the trunk has been received by the railroad and it is estopped from denying this.

The case as presented by the petition is, that the railroad's agent, the Terminal Company, accepts a claim check from the Jacksonville Baggage & Cab Company as satisfactory proof that the trunk that this company delivers to the

Terminal Company is the identical trunk that the prospective passenger delivered to the transfer company.

It takes a risk in doing this, but its willingness to assume this risk with regard to one person or company, and not for others, is no ground for mandámus to require it to assume the same risk with regard to all licensed draymen in the City of Jacksonville.

The writ if issued will require the Terminal Company to do this, and "to check baggage to its destination without further identification of baggage."

A passenger's railroad ticket is his contract with the railroad company that it will transfer him and his baggage to destination; the check is the railroad's acknowledgment that it has received the passenger's baggage and will transport it to its destination.

To grant the prayer of the petition would deprive the railroad company, or its agent the Terminal Company, of its right to require identification and satisfactory proof of ownership of baggage, before checking it to destination.

The railroad's position is that, a stub from every Tom, Dick or Harry, holding a license from the city to do a transfer business, is not sufficient proof that such licensee delivered to the Terminal Company the trunk that the prospective passenger entrusted to him.

This Court by issuing the writ will say, in effect, that "the stubs are ample proof, and must be accepted from every licensed drayman or transfer company as such."

The attitude of the railroads is that they are willing to accept the stubs from such transfer companies as they consider reliable, or that are financially responsible to answer

in damages for their mistakes, or from which they require indemnifying bonds, but will not do so from those they do not consider reliable or financially responsible.

This reasonable measure of protection required by the Terminal Company we are asked to say is "unjust and improper discrimination." I do not so regard it. On the contrary, it is a wise and reasonable rule, for the protection of the prospective traveler, as well as for the railroads.

In some of the larger cities the railroads furnish certain hotels with duplicate baggage checks, and upon presentation of a railroad ticket to the head porter of the hotel, baggage is checked at the hotel, and duplicate railroad check is given to the prospective passenger. The railroads cannot be required to do this, and if they do they assume responsibility for any mistakes made by the hotel in checking the baggage. In such transactions, the hotel acts as the agent of the railroad, precisely as the Jacksonville Terminal Company acts as the agent of the railroads in checking baggage.

If the principle upon which the writ is asked for in this case is a sound one, the railroads could be required by mandamus to furnish duplicate railroad checks to every hotel and lodging house licensed in the city, and permit them to check trunks to destination, and be responsible for their acts.

ELLIS, J., Dissenting.—An alternative writ of mandamus was issued to the Jacksonville Terminal Company and J. L. Wilkes, General Manager, upon the petition of the Railroad Commissioners to compel the respondents to obey Order No. 724 which required the Jacksonville Terminal Company, upon application to it upon the payment of a

reasonable charge therefor, to issue to "all persons and companies duly licensed by law to do a transfer business in the City of Jacksonville, Florida, "triplicate stub form baggage claim checks, in serial numbers' for use in the transfer and delivery of baggage to the union station of the Jacksonville Terminal Company at Jacksonville, Florida, the first and last stubs of such baggage claim checks to contain suitable blank lines for filling in the name of the baggage transfer company or person conveying the baggage to said station, the second or middle stub to contain suitable blank lines for the entry of gross weight of baggage, date and hour of receipt and condition of baggage when received, all of said stubs to bear the same number; and the said Jacksonville Terminal Company shall receive at its said station for transportation all baggage to which there is attached together the first and middle stubs of such baggage claim check, and on receipt of such baggage in order to expedite the checking of same the middle stub shall be removed from such baggage and delivered to the checking clerk at the checking window, which middle stub shall be the checking clerk's authority for checking the passenger's baggage, and upon the presentation of the duplicate claim check bearing the same number, accompanied by a proper railroad ticket, to the said Jacksonville Terminal Company at its said union station, the said *Jacksonville Terminal Company shall without further identification of baggage check such baggage to its destination.*"

The alternative writ alleged that the Jacksonville Terminal Company operates a passenger terminal or union depot in Jacksonville for the "purpose of receiving, delivering or transferring passenger traffic to and from the City of Jacksonville, Florida, or to or from one or more railroads operating its train service into said terminal or depot from

or to any other such railroad or railroads.'' The writ avers that the Terminal Company, the business of which is managed, directed and controlled by its General Manager, J. L. Wilkes, was guilty of a practice which resulted and operated as an unreasonable and unjust discrimination against persons or passengers sending their baggage to the union depot by draymen or transfer companies other than a certain transfer company known as the Jacksonville Baggage & Cab Company. The purpose of the order was to abate such unlawful discrimination by regulating the reception of baggage for transportation by railroad at the union depot. The practice complained of consists in the Terminal Company ''honoring for identification purposes the baggage claim checks issued by the Jacksonville Baggage & Cab Company and in refusing to honor for identification purposes baggage claim checks issued by other persons or companies engaged in the transfer business at Jacksonville.''

The order commands the Terminal Company to desist from practicing the unjust discrimination by complying with the rule prescribed and herinbefore quoted.

It is apparent from the allegations of the writ that the trouble which caused the complaint and finally resulted in the order made by the Railroad Commissioners comes about in the following manner: A prospective passenger on one of the railroad lines running into the terminal station at his hotel or residence in the city calls for the services of a transfer company or a person engaged in the transfer business in Jacksonville, in the removal of his trunk or other baggage which he desires to have checked by the railroad company upon whose line he proposes to travel, from his residence or hotel to the union depot operated by the Terminal Company.

Some time afterwards the prospective passenger arrives at the union depot purchases a ticket for his transportation from the particular railroad over whose line he proposes to travel, he presents his ticket and his baggage claim check at the window of the railroad checking clerk, who is an employee of the Terminal Company, that his baggage may be checked by the railroad company to his destination. Now if the traveller who has by the purchase of his railroad transportation ticket become a passenger upon the line of the particular railroad whose ticket he holds, presents a baggage claim check issued by the Jacksonville Baggage & Cab Company, in other words if he employed that company to transport his baggage from the hotel or residence to the union depot, he has no difficulty in obtaining his railroad baggage check, but if he presents a baggage claim check issued by any other transfer company or person engaged in that business, he does have difficulty in obtaining his railroad baggage check, because the Terminal Company through its railroad checking clerk, finds much difficulty in identifying the passenger's baggage in the one case and no difficulty whatsoever in the other. The baggage must be identified by the passenger in order that the railroad check may be fastened to it and a duplicate given to him. In the one case the "Baggage Claim Check" issued by the Jacksonville Baggage & Cab Company is sufficient identification and proof of ownership and location in the baggage room of the traveller's parcel, to enable the clerk without delay to attach the railroad check, but in the other case, whether the traveller is willing or not to have his baggage checked upon such evidence as a drayman's "claim check," the clerk will not attach the railroad check to the baggage bearing such drayman's check if the check is issued by any other person or corporation than the Jacksonville Baggage & Cab Company. So that in the latter case the traveler

is required to spend much time, be subjected perhaps to much annoyance and delay, probably causing him to miss his train, by going into the baggage room and searching among the trunks, satchels, boxes and other baggage therein contained until he finds his trunk or bag and then submit to the clerk such proof of ownership as the latter may under the circumstances require. The difficulty which the Terminal Company has in locating baggage and identifying it in the one case and the absence of any difficulty in the other may arise from the incompleteness of the system adopted by it for receiving and checking baggage, or it may be the result of design, springing from the ulterior purpose to mildly coerce the Jacksonville traveling public to employ a certain drayman to carry trunks to the union depot. So that when by such methods the favored drayman has increased his business many times in volume the Terminal Company may add another source of revenue to its activities by charging a price for the concession. In this manner the public is again fleeced by being required upon pain of much inconvenience to employ a certain drayman, perhaps soon to pay him a "trifle" more for the service in order to secure from the Terminal Company that efficient and reasonable service that the transportation companies and Terminal Company owe and are required by law to perform without further compensation than is obtained in the sale of a ticket for passenger transportation.

The purpose of the order was to prevent such discrimination and abuse of privilege and to require the establishment of a system for the reception and identification of baggage that will secure to all persons alike equal facilities for the identification and checking of their baggage.

The order although mandatory in its language as to the checking clerk's authority and the duty of the Terminal

Company to check baggage upon the presentation by a passenger of a railroad ticket and drayman's duplicate claim check, it does not, nor could it be so construed as an effort to add any resposibility either to the Terminal Company or railroad company for any mistake, error or fraud on the part of the drayman who between the residence or hotel of the traveller and the union depot substitute other and different baggage from that received from his traveller employer. There can be no question of responsibility upon the respondent or railroad company checking the baggage, arising from that source. The baggage which is brought to the depot and which bears a drayman's claim check corresponding in number with the stub presented at the window by the passenger is checked to the latter's destination as disclosed by his railroad ticket, upon his request; he assumes the responsibility for any error, mistake or fraud that may have been committed by his drayman, and in case he finds upon his arrival at his destination that the wrong trunk or parcel has been delivered by the railroad company he will find it very difficult to meet the burden of proving in an action against the railroad company or Terminal Company for damages for the loss of his baggage, that the baggage which he delivered to the drayman at the hotel was delivered to the Terminal Company with a drayman's check upon it coresponding in number with the stub presented by him at the window.

The wisdom of the rule is not apparent, but with that we have nothing to do. If the traveling public is willing to have its baggage checked by transportation companies upon what in many cases will be most unsatisfactory evidence of identification it must be held to vouch for the evidence which it furnishes and cannot complain if it proves to be unreliable. There is nothing in the rule preventing a pas-

senger from identifying personally his own baggage. The drayman's check is the clerk's authority for checking the baggage only when the holder of the first "stub" or coupon presents it at the clerk's window and requests the checking of his baggage upon that evidence of its ownership. When that is done the rule absolves both the Terminal Company and railroad company from liability arising from an insufficient identification of the passenger's baggage. The rule may in the end create more annoyance and be productive of more inconvenience and loss to the traveling public than it initiatorily saves, but be that as it may, with that feature of the case we have no concern. It is a question of power in the Railroad Commissioners to make the order.

It is one of the duties of a common carrier to transport the baggage of passengers and to provide a place for its reception and facilities for its identification and checking when that system is in practice. The respondent Terminal Company is empowered under its charter to, and is employed in the business (so it is alleged in substance) of providing baggage rooms for its railroad patrons and facilities for the identification and checking of such baggage. It is a common carrier so far as it carries on within the scope of these activities and is under the jurisdiction of the Railroad Commissioners. Sections 4615, 4617, 4618 Revised General Statutes, 1920; Kates v. Atlanta Baggage & C. Co., 107 Ga. 636, 34 S. E. Rep. 372, 46 L. R. A. 431; Smith v. Boston & Maine R. Co., 44 N. H. 325, text 330; Woods v. Devin, 13 Ill. 746; Johnson v. Florida East Coast R. Co., 66 Fla. 415, 63 South. Rep. 713.

The case presented is not analogous to those where railroad companies give to certain draymen or transfer companies the exclusive privilege of soliciting employment

from railroad passengers upon trains or certain places on the railroad grounds.

A motion was made by respondent to quash the alternative writ. I am of the opinion that the motion should be denied. I am authorized to say that Mr. Justice WEST concurs in this opinion.

### On Petition for Rehearing.

PER CURIAM.—The following petition for rehearing was filed:

"Come now the relators in the above entitled cause, by their undersigned attorney, and respectfully suggest that the court erred in rendering its decision and judgment herein, and particularly in pronouncing the order quashing the alternative writ heretofore issued in said cause, for the following reasons:

"1. That in deciding said cause said court failed to consider that corporate charters of common carriers are controlled by the provisions of the statutes of the State which grant to the Railroad Commission authority to make rules and regulations for the correction of abuses, prevention of unjust discrimination and the regulation of all matters pertaining to the receipt, handling, carrying, transportation and delivery of property, and the care, comfort, convenience and accommodation of passengers for the good of the public; and that the order in question, made by the Railroad Commission, was made and promulgated for the convenience of passengers in the reception and identification of baggage, and that therefore the making of said order was within the power and jurisdiction of the commission as conferred by the statutes of this State.

"2.   That it is no defense to the enforcement of a rule or regulation of the Railroad Commission supervision and regulating common carriers that the charter of the carrier does not expressly authorize the performance of the act required by the order or the performance of the act in the manner required by the order.

"3.   That all common carriers subject to the supervision and regulation of the Railroad Commission must perform the duties prescribed by the Railroad Commission regardless of their express corporate charter power; and all provisions of the statutes of the State and consequently all orders of the Railroad Commission duly made thereunder are implied in law as corporate charter powers.

"4.   That every carrier corporation has inherent and implied power in addition to the express powers provided for in its charter to do and perform all acts required by orders of the Railroad Commission duly made under the statutes of the State of Florida.

"5.   That the court in pronouncing judgment herein tested the sufficiency of the alternative writ by absence therefrom of an allegation that the Terminal Company, as the agent of the several railroads entering the terminal depot, is authorized to check baggage to its destination; and therein the court erred, for the reason that Section 4618 of the Revised General Statutes of 1920, (now incorporated in Chapter 8469, Acts of 1921), provides that 'every rule, regulation, schedule or order heretofore or hereafter made by the Commissioners shall be deemed and held to be within their jurisdiction and powers, and to be reasonable and just and such as ought to have been made in the premises, and to have been properly made and arrived at in due form of procedure, and such as can and ought to be executed, unless the contrary plainly appears

on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears.' If the Terminal Company, as the agent of the several railroads entering the terminal depot, is not authorized to check baggage to destination, this fact would constitute defensive matter of pleading and proof and as such should be pleaded by the defendant and the contrary need not be averred by the pleader in the alternative writ.

''6.  That it is a matter of common knowledge that the Terminal Company, by consent of, or arrangement with the carriers using the terminal depot at Jacksonville, Florida, for years has received and checked to its destination the baggage of passengers traveling by railroad from that city; and there is a presumption of law growing out of that practice that the Terminal Company is authorized to do that which said carriers, by themselves or through their agents and servants, are bound by law to do for the convenience of the traveling public. In testing the sufficiency of the alternative writ the court inadvertently omitted to give consideration to this feature of the case; and by the terms of its opinion rendered herein called for a showing of facts the existence of which was judicially known to the court and ought so to have been considered.

''7.  That the judgment given herein seems to have been based upon the reasoning that since there was no affirmative showing that the Terminal Company, by its charter, was empowered to issue baggage claim checks for the purpose of identification, the Railroad Commission was without authority to compel it to do so; but this reasoning apparently ignores the essential and underlying consideration that pervades every field of corporate enterprise and by which must be determined on the one hand that which

may lawfully be done under a grant of corporate powers, and on the other, that which simply relates to the method, means or expediency of executing those powers, express or implied, and carrying them into effect.

"8. That the court, in pronouncing judgment herein, adhered to the strict rules of pleading ordinarily applicable in mandamus proceedings, giving every intendment against the relators and resolving every presumption, by omission of allegation or otherwise, against the demands of the alternative writ; whereas Chapter 8469, Acts of 1921, (and Section 4518 of the Revised General Statutes of 1920, which was superseded by said Chapter 8469), provides that where the powers and jurisdiction of the Railroad Commission are called into question, or the validity of any order promulgated by them is in doubt, the promulgations and doubts in every such case shall be resolved in favor of said commission, and in support of their jurisdiction, the regularity of their proceedings and the reasonableness and justness of the orders made by them.

"9. That the order to issue claim checks to all transfer agents does require the Terminal Company to issue such checks to all transfer agents on identically the same terms and conditions.

"10. That it does not appear by said alternative writ that said Terminal Company is issuing baggage claim checks to any transfer agent and not to others.

"Wherefore, in consideration of the premises, relators pray that said cause be ordered to rehearing, and that upon rehearing thereof before the court counsel for the respective parties shall be allowed the privilege of oral argument; that said order quashing the alternative writ herein be vacated and set aside, and that the respondents

be ruled to answer said writ and show cause by their re-
turn thereto why said relators should not have the relief
therein prayed.

Respectfully submitted,

JAMES E. CALKINS,

Attorney for Relators.

There is nothing in the titles or contents of the statutes
prescribing the powers and duties of the Railroad Commis-
sioners, that indicates a legislative intent to authorize the
Railroad Commissioners to add to or vary the charter
powers of common carrier corporations, even if such an
intent would be operative as law in view of constitutional
provisions and limitations.

The provisions of the statute that "every rule, regula-
tion, etc., made by the Commissioners shall be deemed and
held to be within their jurisdiction and powers," etc., has
reference to the authority of the Railroad Commissioners
and not to the corporate powers of chartered companies,
and the provision does not purport to dispense with a
proper showing that the corporate act required of a com-
mon carrier by the Railroad Commission is within the cor-
porate authority of the common carrier when such author-
ity is not contained in a statute and does not appear to be
a necessary incident to corporate powers that do appear.
The statutes of the State do not authorize the respondent
company to issue baggage claim checks to persons and com-
panies doing a baggage transfer business, and there is
nothing in the writ to indicate that the Terminal Company
has such corporate power. The issuance of such checks is
not a necessary incident to the powers of a terminal com-
pany.; and for aught that appears the powers of the re-
spondent company may be specifically limited. If the com-

pany has no corporate power to issue the baggage claim checks to persons doing a baggage transfer business, the Railroad Commissioners cannot confer such power, and there is then no semblance of authority upon which a presumption in favor of the jurisdiction of the Railroad Commission to make the order can be predicated under the statute. If the statutes or the respondent company's charter rights do not authorize it to issue the baggage claim checks, a mandatory writ requiring such checks to be issued would command an unauthorized function to be performed by the corporation; and courts do not by mandamus enforce unauthorized corporate acts.

If the court can take judicial notice of the practice of a particular corporation, it does not follow that the practice is authorized by the corporate charter.

If the terminal company has corporate power to issue baggage claim checks to persons and companies doing a transfer business, and this is duly made to appear, then the presumption of jurisdiction and propriety of the Railroad Commission's order should be indulged under the statute. Similar considerations affect the question of checking baggage to destination beyond the limits of the terminal company's activities, with added propositions as to agency and parties defendant. In prior mandamus cases against common carriers the functions sought to be enforced were obviously within the corporate powers of the carriers.

Rehearing denied.

BROWNE, C. J., AND TAYLOR AND WHITFIELD, J. J., concur.

ELLIS AND WEST, J. J., dissent.