THE STATE OF FLORIDA, ex rel. R. HUDSON BURR, A. S. WELLS AND A. D. CAMPBELL, RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, Relators, v. JACKSONVILLE TERMINAL COMPANY, A CORPORATION, Respondent.

En Banc.

Opinion Filed December 4, 1925.

1. If the principles of the common law do not forbid unjust discrimination by a common carrier in checking passengers' baggage to destination, such discrimination may be remedied pursuant to organic and statutory provisions, if there is in fact and in law an unjust discrimination. Whether there is unjust discrimination depends upon the facts and the controlling provisions and principles of law.

2. The Jacksonville Terminal Company is not a mere agent or employee or contractual instrumentality of several railroad

companies; but it is a distinct corporate legal entity that has been chartered pursuant to the laws of the State and is authorized by its charter to acquire property for the purpose and to furnish terminal facilities for railroads entering the City of Jacksonville, Florida.

3. By statute all terminal or union depot companies are common carriers, and in rendering the service they are authorized to perform as common carriers, they are subject to supervision and regulation by the Railroad Commissioners, as provided by statute, pursuant to the organic provision on that subject.

4. The Jacksonville Terminal Company is a seperate common carrier corporation chartered and authorized to do a terminal business for the railroads that enter its depot; and it being authorized to check baggage to destination and is in fact so doing; if unjust discrimination is practiced by the terminal company, it is not necessary or appropriate that the several railroad companies over whose lines baggage is checked by the terminal company, should be made parties respondent in mandamus proceedings to remedy such unjust discrimination.

5. Where an unjust discrimination by a common carrier in checking passangers' baggage to destination in violation of the carrier's duty to the public, is duly alleged in an alternative writ of mandamus and such allegations are not negatived by other allegations, a motion to quash the alternative writ is properly denied.

6. The Constitution requires that unjust discrimination as well as excessive charges by common carriers be prevented.

7. The Railroad Commissioners have statutory authority to make just and reasonable rules and regulations to be observed by a terminal company in affording appropriate facilities and accommodations to passengers using the terminals. The statutory provisions necessarily include and are intended to include authority to make reasonable and just regulations respecting the receipt and handling and checking to destination of baggage of passengers, and to prevent unjust discriminations by the terminal company in receiving, handling and checking baggage.

8. The principles of the common law are in force in this State when not in conflict with organic and statute law.; and the rules of the common law as well as the statutes are designed for application to new conditions and circumstances, as they may be developed by enlightened commercial and business intercourse, that are within the scope and remedial intent of existing provisions and principles of law. The provisions and principles of law are intended to be vitalized by practical utility, subject to organic limitations.

9. One of the duties of a common carrier of passengers is to receive and transport personal baggage of a passenger; and a part of such duty is the furnishing of convenient facilities for receiving, handling and ·checking baggage without unjust discriminations that affect passengers.

10. It is the common law duty of common carriers to serve the public efficiently and impartially and without unreasonable discrimination in any respect, and no contract or practice to the contrary will relieve a carrier of the duty to serve the public without unjust discrimination.

11. Any contract made, ·and any usage. custom or practice observed by a common carrier that has immediate relation to the duties of the carrier to its patrons among the public, though it may be binding as between the parties, is, under the Constitution and laws of this State, subject to lawful governmental rules and regulations of the business of the common carrier. But this principle is confined to matters that directly and materially affect the public interests.

12. A binding contract by a public utility company may be enforced against the utility company unless relieved by the State in the interests of the public. But there must be a binding contract that is not forbidden by any provision of controlling law.

13. The State through its Railroad Commission may duly regulate the handling and checking to destination of passengers' baggage by terminal company common carriers where the authority of Congress in the premises has not been asserted

or exerted, and the State regulations do not materially burden interstate commerce.

14. Orders, rules and regulations of the Railroad Commissioners are administrative in their nature, and though they are by statute made *prima facie* reasonable and just, yet to be enforced by the courts when violated, they must be within the scope and intent of the authority conferred by statute, must be in accord with applicable organic provisions and limitations, and must be reasonable and just with reference to all rights materially affected thereby. Such orders, rules and regulations are not final adjudications, and they are subject to appropriate judicial review for the protection of organic or substantial rights.

15. The liability of a common carrier as such for the baggage of a passenger commences with the delivery of such baggage to, and the express or implied acceptance by, the carrier, and not before.

16. In some cases special concessions may lawfully be allowed transfer agents by common carriers of passengers; yet such privileges will not be permitted to be so exercised as to cause unjust discrimination affecting passengers.

17. While the right to the management and control of the property of common carriers is inherent in the carriers who own or operate the property, yet, because of the nature of the service rendered and the immediate interest of the public therein, supervision and regulation of the operation and of the business done as common carriers are within the powers of the State as to interstate business when lawful Federal authority is not dominant, and this governmental supervision and regulation may be lawfully exerted through administrative officers and commissions or boards when they are validly constituted, and their governing powers and duties in the premises are legally defined and limited by duly enacted statutes.

18. In view of the nature of the service rendered and its relation to the public, which justify governmental regulation in the public interest, the burdens to the carrier that are incident

to lawful governmental supervision and regulation to conserve the public welfare, do not deprive the carrier of property rights without due process of law.

19. When mere convenience of the public is the sole consideration, unreasonble regulations that are clearly more burdensome to the carrier than they are correspondingly beneficial to the public, are not contemplated by the law; and the property rights of the carrier are protected by organic law from burdens that are not necessary to personal safety and have no fair relation to, or are in excess of just requirements for, a reasonably efficient, non-discriminating public service.

20. The lawmaking department of the State may by statute authorize an administrative officer or board to determine facts in making and enforcing administrative regulations, and such determination may by statute be made *prima facie* reasonable and just; but such determination cannot be made conclusive upon the courts, when duly contested in appropriate proceedings; and an order unsupported by evidence is invalid.

21. The Railroad Commissioners have only such powers as are conferred by the express and implied provisions of the statutes.

22. The statute provides that every regulation made by the Railroad Commissioners shall be deemed and held to be reasonable and just, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence. This requires the court to determine whether asserted invalidity or error in a particular regulation is clearly made to appear.

23. Where there is substantial evidence to sustain an administrative regulation and no rule of law is viloated by the regulation the courts will in general enforce it. But as a matter of organic law the making of such regulations is not conclusive of their validity; and where a regulation is promulgated without substantial evidence to support it, or in violation or disregard of controlling provisions or principles of law to the injury of fundimental rights, or its practical operation would

be essentially unreasonable or unjust to those affected by it, the courts will not enforce it.

24. Unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners, and when it appears from the pleadings or the evidence in a case that an order or regulation is unreasonable, or unjust with reference to all the substantial interests affected by it, or is violative of constitutional provisions for the protection of property rights, such regulations will not be enforced.

25. Orders of the Railroad Commissioners requiring particular depot and transfer facilities to be furnished for the convenience, not for the safety, of patrons, will not be enforced by mandamus when the burden to the carrier would be so out of proportion to the benefits to accrue to the public as to show the orders to be unreasonable and unjust.

26. The law is designed "to prevent *unjust* discrimination," by those rendering public service and does not forbid just discriminations that are incident to the protection of organic or other substantial rights.

27. In determining whether a practice of a common carrier is unjustly discriminating as to passengers "the rights of the carrier are to be considered together with other facts and circumstances affecting the subject.

28. There is no statute in this State defining as a duty the checking of baggage to destination by common carriers.

29. While the general powers conferred upon the Railroad Commissioners clearly authorize orders disigned to remedy unjust discriminations in the handling and checking of baggage after it is delivered to a terminal company to be forwarded over a railroad as an incident to passenger transportation, yet such an order must be predicated upon an unjust discrimination.

30. Local transfer agents are not a part of any system of connecting carriers as to which the Railroad Commissioners have statutory authority; and the Railroad Commissioners have

## VOL. 90, JUNE TERM, 1925. 727

State ex rel.' Burr et al. v. Jacksonville Terminal Co.—Syllabus.

no power by regulations affecting the public service of the terminal company or otherwise to in effect make local transfer agents the agents of the terminal company or of the railroads entering the terminal station.

31. The right of a railroad terminal company to protect itself against the delicts of irresponsible transfer companies or persons who deliver to the terminal company the baggage of prospective passengers cannot lawfully be wholly denied, though the exercise of such right may be reasonably regulated by due course of law particularly as it affects the duties of the terminal company to its traveling patrons.

32. The service rendered the public who employ a local transfer company is accessorial in its nature and one which the law does not require a common carrier to perform.

33. The law does not require a common carrier to accept any transfer agent's claim or identification check as the basis for the issance by the carriers of a baggage check to destination.

34. Even if the Railroad Commissioners have authority to prescribe the form of "baggage transfer claim checks" that may be used by baggage transfer agents, over which transfer agents the Commissioners have no authority, yet the law does not authorize the Railroad Commissioners to require a terminal company common carrier against its consent to check to destination without identification baggage delivered to the terminal company by any and all transfer agents who use the "baggage transfer claim checks" prescribed by the Railroad Commisisoners, since the transfer agents are the agents of the passenger and not of the terminal company and the terminal company has a right to protect itself against the delicts of irresponsible transfer agents, and it is not an *unjust* discrimination for the terminal company to require passengers to identify their baggage before it will be checked to destination when the baggage is transported to the terminal station by the passengers' transfer agents who have not by contract and bond indemnified the terminal company against liability in damages for loss of or injury to baggage by the transfer company before it is delivered to the terminal company, even though the terminal company does check to destination with-

out identification by the owner, baggage delivered to the terminal company by one transfer agent who has by contract and bond indemnified the terminal company against loss because of the delicts of the transfer agent, it not appearing that the terminal company has unlawfully or unjustly discriminated in taking indemnifications from responsible transfer agents.

A case of original jurisdiction.

Peremptory Writ denied.

*James E. Calkins, Fred H. Davis* and *C. D. Towers,* for Relators;

*John E.* and *Julian Hartridge,* for Respondent.

### STATEMENT.

The alternative writ of mandamus issued herein alleges that the respondent terminal company, a common carrier corporation that is chartered to furnish railroad terminal facilities in the city of Jacksonville, Florida, is authorized by the several railroads entering the terminal company's depot, to receive and check to destination, personal baggage of passengers departing from the terminal depot over the railroad lines entering the respondent's terminal or Union Station; and that "in the matter of receipt of baggage for transportation at the Union Station in Jacksonville," after notice and hearing, an order was made by the Railroad Commissioners which includes:

"Section 5. And now on this day the said matter coming on for further consideration before said Commissioners in regular session at their office in the city of Tallahassee, Florida, and it appearing to said Commissioners from the evidence adduced at said hearing that said Jacksonville Terminal Company operates the Union Station at Jacksonville,

Florida, for the railroads entering same, and is authorized by said railroads to receive, check and deliver the personal baggage of passengers arriving at and departing from said depot and does actually perform said service of receiving, checking and delivering such baggage; that said Jacksonville Terminal Company honors, for the purpose of checking baggage to destination, the baggage claim checks issued to persons by the Jacksonville Baggage and Cab Company, a certain transfer agent, but refuses to honor, for the purpose of checking baggage to destination, the baggage claim checks issued to persons by other transfer agents, which practice actually results and operates as an unreasonable and unjust discrimination against persons or passengers sending their baggage to the Union Station of the Jacksonville Terminal Company by persons or companies other than the said Jacksonville Baggage & Cab Company; and it further appearing that said Railroad Commissioners should make a rule or regulation to prevent such unjust discrimination between passengers in furnishing facilities; and that they should for the good, convenience and proper accommodation of the traveling public make and promulgate a rule regulating the reception, identification, and checking of baggage at the said Union Depot in the city of Jacksonville, Florida;

"Section 6. Therefore, to prevent unjust discrimination between passengers in furnishing baggage checking facilities; and for the good, convenience, and proper accommodation of the traveling public, the following rule regulating the reception, identification, and checking of baggage at said Union Depot at Jacksonville, Florida, is hereby formulated, adopted and promulgated by the Railroad Commissioners of the State of Florida.

"Section 7. The personal baggage of all persons presented by any transfer agent for transportation shall be received, accepted and kept in the baggage room at the Union Depot in Jacksonville, Florida, without preference,

difference or discrimination of any kind whatsoever; provided each piece of such baggage shall have attached thereto the first and second stubs of a cardboard triplicate stub form baggage claim check of substantially the following form:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

BAGGAGE TRANSFER CLAIM CHECK.

No. . . . . . . . . . . . . . . . .

Issuied by. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Name of tranfer agent)

For baggage to be delivered at
Jacksonville Union Depot.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
This stub to be detached and filed at Check Counter.

No. . . . . . . . . . . . . . .

Gross Weight. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Condition of baggage
when received by
Terminal Company. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Date. . . . . . . . . . . . . . . . . . . . . . . Time. . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CLAIM CHECK DUPLICATE.

No. . . . . . . . . . . . .

Issued by. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Name of transfer agent)

Present this check at Jacksonville Union Depot.

Must be exchanged at Baggage Counter for regular railroad baggage check before baggage will be forwarded.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"And said Jacksonville Terminal Company shall on receipt of all such baggage, in order to expedite checking of same, remove said second or middle stub from such baggage and place with the checking clerk at the baggage checking counter, which middle stub shall be the checking clerk's authority for checking such baggage to its proper destination.

"And the said Jacksonville Terminal Company, upon the presentation to it by the passenger, at the baggage counter in said Union Depot, of the 'claim Check Duplicate' that is, the third stub of said baggage claim check, accompanied by a proper railroad ticket, shall check such baggage to its proper destination, all as aforesaid without preference, difference or discrimination of any kind whatsoever between passengers or their respective baggage; provided, however, that said Jacksonville Terminal Company is not required to check any piece of baggage which has not been actually delivered to it as aforesaid; and provided, further, that each piece of baggage to be received and checked as aforesaid shall be. identified by a triplicate stub from baggage claim check as hereinbefore prescribed, each of said three stubs to contain the name of the transfer agent and the same identification number; but no two baggage claim checks used by the same transfer agent shall bear the same identification numbers."

It is alleged that the respondent has not complied with the order, and the alternative writ commands the respondent "To accept and keep in your baggage room at your Union Depot in Jacksonville, Florida, without preference,

difference or discrimination of any kind whatsoever, the personal baggage of all persons presented by any transfer agent for transportation by railroad, provided each piece of such baggage shall have attached thereto the first and second stubs of the cardboard triplicate stub from baggage claim check of substantially the form prescribed by the Railroad Commissioners of Florida in Section 7 of Order No. 724, as amended by orders numbered 725, and 739, respectively;

"And after the actual receipt by you of said baggage having attached thereto the first and second stubs of the uniform baggage claim check prescribed by the Railroad Commissioners in Section 7, of Order No. 724, as amended, and on presentation to you by the passenger at your baggae counter in your said Union Depot of the 'claim check duplicate' (that is the third stub of said uniform baggage claim check) accompanied by a proper railroad ticket, to check such baggage to its proper destination without preference, difference or discrimination of any kind whatsoever between passengers or their respective baggage;

"And in all things to fully observe and comply with said Order No. 724, as amended by orders numbered 725 and 739, respectively, of the Railroad Commissioners of the State of Florida," or to show cause, &c.

An unjust discrimination being alleged and not refuted by other allegations, a motion to quash the alternative writ, having the effect of a demurrer, was denied by this court without opinion.

An answer was filed to meet the allegations of unjust discrimination.

An agreed statement of the facts pertinent to the issues in the cause, signed by counsel for both parties, was filed; whereupon the relator, moved for a peremptory writ.

The agreed statement of facts contains the following:

"Said Jacksonville Terminal Company was at the be-

ginning of this suit and still is, operating the Union Depot in Jacksonville, Florida, to and from which all passenger trains of the Atlantic Coast Line Railroad Company and Seaboard Air Line Railway Company, Florida East Coast Railway Company, Southern Railway Company, and Georgia Southern & Florida Railway Company arrive and depart. Said depot is owned by said Jacksonville Terminal Company, and for many years past has engaged in the business of operating said Union Depot solely for said railroads.

"In so owning and operating said Union passenger depot said Terminal Company sells railroad tickets and checks baggage, makes up trains, for departure, unmakes trains which have arrived, switches through passenger cars, with passengers aboard, from the train by which they arrive to the train by which they depart, provides sheltered walks for passengers boarding or alighting from trains, transports passengers' baggage which has been checked by trucks (propelled by hand or motors) from the baggage room to departing trains after such baggage has been properly checked in baggage room of the Terminal Company for such railroad transportation, and transports baggage from arriving trains to the baggage room, stores outgoing baggage after the same has been received in the baggage room and until it is checked for railroad transportation to point of destination and transported by it to departing trains as aforesaid, and stores baggage after the arrival of trains and the transportation from the trains to the baggage room until it is claimed by passengers or by their agents, and also receives and stores baggage from prospective passengers or their agents, who send or bring their baggage to the depot, charging a storage charge according to published tariffs for excess time of storage, and in the case of baggage received which has had applied to it the claim check or identification check used by Jacksonville Baggage & Cab Company, Jacksonville Ter-

minal Company will recognize such identification check as sufficient evidence as to the receipt by it and identification of such baggage and upon presentation and surrender of a duplicate stub of the check applied to such baggage by Jacksonville Baggage & Cab Company, together with railroad ticket as hereinafter provided, it will issue a railroad check for the transportation of baggage to destination and for identification of such baggage at destination.

"The Jacksonville Terminal Company will not exchange a railroad check for such transportation of baggage by railroad to destination for the claim check of any other company or person than the Jacksonville Baggage & Cab Company, even though such baggage may be in the baggage room at the time such claim check, together with a passenger's railroad ticket, is presented at the baggage counter, unless the baggage sought to be checked is identified as prescribed by the rules of The Jacksonville Terminal Company for identification, as in this agreement set forth."

"That said Jacksonville Terminal Company is duly authorized by the several railroads to check passengers' baggage to destination, and in so doing it uses railroad baggage checks furnished by the respective railroads and not checks of The Jacksonville Terminal Company; and that said Jacksonville Terminal Company is likewise duly authorized by said railroads to deliver baggage to passengers, upon surrender of checks issued by the railroad for transportation of baggage to Jacksonville from point of origin.

"The said Jacksonville Terminal Company honors or recognizes for the purpose of identifying the personal baggage of passengers and for the purpose of checking such baggage to its destination, the bagage claim checks issued to persons or passengers by The Jacksonville Baggage & Cab Company, a certain transfer company doing a transfer business in the city of Jacksonville, Florida, but said Jacksonville Terminal Company refuses to honor or recognize. for the

purpose of identifying the personal baggage of passengers, and for the purpose of checking such baggage to its destination, the baggage claim checks issued to persons and passengers by other transfer agents.

"When a prospective passenger sends his baggage to the depot by the Jacksonville Baggage & Cab Company said company's transfer man gives him a Jacksonville Baggage & Cab claim check and after the passenger has purchased his ticket he presents this claim check together with his ticket at the baggage checking counter, upon surrender of such claim check, baggage is then checked to destination without any further delay and without any further act on the part of the passenger. If a passenger presents the claim check of an independent transfer company as an identification of his baggage, together with his ticket at the window, said Jacksonville Terminal Company will refuse to check his baggage to destination on such identification, and if the baggage has been received in the baggage room of the Jacksonville Terminal Company, the passenger will be required to surrender the claim check of Jacksonville Terminal Company which was applied at the time baggage was received in the baggage room and in the absence of such Jacksonville Terminal Company claim check the passenger would then be required to identify his baggage in a manner satisfactory to The Jacksonville Terminal Company, resulting in such delay and inconvenience to the passenger as the time and acts involved occasion. The only way in which a passenger using an independent transfer company may avoid this delay is by waiting until the agent of the transfer company selected by him delivers to him the claim check of The Jacksonville Terminal Company, at such point as may be agreed upon, or by identifying his baggage at the depots, viz., either to identify his baggage at the station or to wait at some place until the transfer company returns to him the claim check of The Jacksonville Terminal Company."

"The Jacksonville Baggage & Cab Company pays $7,500.00 annually for the exclusive privilege exercised by said company which includes office rent, storage space for baggage, taxicab and sight-seeing privileges, and parking space forty (40) feet wide by two hundred and twenty (220) feet long on Plaza, and has given bond in the sum of $10,000.00 with good sureties, to save harmless The Jacksonville Terminal Company from loss or damage to any baggage handled by it or by its use of claim checks."

"The giving of claim or identification checks by Jacksonville Baggage & Cab Company is prior to delivery to the Jacksonville Terminal Company and recognition of same for identification and exchange of such identification check for railroad check covering tranportation of such baggage to destination is prior to the actual delivery of the baggage to the railroad over which the same is checked.

"Baggage will not be removed from the baggage room of the station for transportation until a check has been applied thereto over the route that it is destined to move and will not have a check applied to it until a ticket over the line that the baggage is to be routed is presented and the baggage identified either by having on it a claim check issued by The Jacksonville Terminal Company, or having on it a claim check of Jacksonville Baggage & Cab Company or is identified as required by the rules of The Jacksonville Terminal Company as in this agreement of facts set forth.

"Every drayman, hackman, corporation, association or company delivering baggage to the depot of the Jacksonville Terminal Company is given a claim check of The Jacksonville Terminal Company which is identical except as to serial number with the form of claim check used by the Jacksonville Terminal Company and hereinafter set forth.

"The Jacksonville Baggage & Cab Company is bonded and pays a substantial consideration for the exclusive privi-

lege of having its claim checks accepted by The Jacksonville Terminal Company for identification of baggage and of having The Jacksonville Terminal Company exchange railroad checks for such claim checks of Jacksonville Baggage & Cab Company, upon surrender of such claim checks and without other identification, and the claim checks of other draymen, hackmen, corporations, associations or companies will not be so accepted and exchanged by The Jacksonville Terminal Company, even though such baggage may be in the baggage room at the time such claim check, together with a passenger's railroad ticket, is presented at the baggage counter, unless the baggage sought to be checked is identified as prescribed by the rules of The Jacksonville Terminal Company for identification, as in this agreement set forth.

"The Jacksonville Terminal Company will issue its claim check to any person or company for each piece of baggage delivered at the baggage room of The Terminal Company and will accept such claim check for purposes of issuing a railroad check for the transportation of such baggage when such claim check of The Jacksonville Terminal Company is presented with a railroad ticket and surrendered in the manner herein stated."

The railroad commission statutes of this State are made applicable "to the transportation of passengers and property and to the receiving, delivering, storage and handling of property wholly within this State" by "all railroads, railroad companies and common carriers engaged in this State in the transportation of passengers or property by railroads or common carriers therein from any point within this State to any point within this State." Sec. 4615, Rev. Gen. Stats, 1920. "The term common carrier, * * * shall be deemed to mean and include * * * all companies and any person or persons owning or operating railroads, passenger terminals or union depots for the purpose

24—Vol. 90.

# 738          SUPREME COURT OF FLORIDA.

of receiving, delivering or transferring passenger traffic to and from the place or city in which said terminal or union depot may be situated, or to or from one or more of the railroads operating its train service into said terminal or depot from or to any other railroad or railroads." Sec. 4617, Rev. Gen. Stats. 1920, Chap. 9308, Acts of 1923. "It shall be the duty of said commissioners * * * To make reasonable and just rules and regulations for the prevention of any unjust discrimination against persons or localities in charges or in furnishing facilities. And they shall have power * * * to supervise, regulate and control all stations, depots, * * * . To regulate, supervise and control all passenger, terminal or union depot companies, whether owned or operated by any railroad in connection with its main line or by separate company organized for that purpose * * * . To regulate all other matters pertaining to the receiving, handling, care, transportation and delivery of property, and to the safety, care, comfort, convenience, proper accommodation and transportation of passengers that shall be for the good of the public * * * To prescribe all rules and regulations appropriate for the execution of any of the powers conferred upon them by law either in express terms or by implication. All rules and regulations made and prescribed by the Commissioners shall be made prima facie evidence in the manner that the schedule are made prima facie evidence. Every rule, regulation, schedule or order heretofore or hereafter made by the Commissioners shall be deemed and held to be within their jurisdiction and their powers, and to be reasonable and just and such as ought to have been made in the premises and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the

contrary so appears. All presumtions shall be in favor of every action of the Commissioners and all doubts as to their jurisdiction and powers shall be resolved in their favor, it being intended that the laws relative to the railroad Commissioners shall be deemed remedial laws to be construed liberally to further the legislative intent to regulate and control public carriers in the public interest. If in any proceeding to enforce any rule, regulation, schedule or order any part theerof shall be found invalid, the court shall proceed to enforce such portion thereof as may be valid if the same can be done.'' Sec. 4618, Rev. Gen. Stats 1920, Chap. 8469, Acts 1921. ''And said Commissioners are hereby given and granted full authority to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions and objects of this chapter.'' Sec. 4661, Rev. Gen. Stats. 1920.

''A presumption in favor of action taken under an asserted delegated statutory power can arise only when some substantial basis of authority for the exercise of the power appears in a statute. Doubts cannot be resolved in favor of a delegated statutory power when there is no enactment that can be a basis for such asserted delegated power.

''If there is no statutory provision that may by its terms or by any fair intendment be regarded as affording a basis for the authority asserted by the Railroad Commissioners in making the order sought to be enforced, the above quoted provisions of the statute as to the existence of jurisdiction and powers and as to indulging presumptions and resolving doubts in favor of action taken by the Railroad Commissioners, can have no application; and the effect of the statute in other cases that may arise can not properly be anticipated here. State *ex rel.* Burr v. Jacksonville Terminal Co., 71 Fla. 295, text 334, 71 South. Rep. 474.

WHITFIELD, J., (*after stating the facts*) :

In State *ex rel*. Burr v. Jacksonville Terminal Co., 82 Fla. 255, 89 South. Rep. 641, 21 A. L. R. 312, the alternative writ of mandamus commanded the terminal company to "provide and issue   *   *   *   triplicate stub form baggage claim checks" to all local transfer companies, &c., and on receipt of baggage with such claim checks "to check such baggage to its destintaion," as is required by Order No. 724 of the Railroad Commissioners, without any showing by allegations or by matters of which the court had judicial knowledge, that the terminal company had charter or other authority to issue such baggage claim checks to local transfer companies or agents, or that the terminal company had authority to check baggage to destination over railroads, or that the terminal company was in fact arbitrarily issuing such baggage checks to some transfer companies or agents and not to others, or was in fact checking baggage to destination over railroads as the agent of the railroads or otherwise.   The alternative writ in that case was quashed.

In this case the alternative writ alleges that the terminal company is a common carrier corporation, chartered to furnish terminal facilities, and is authorized by the railroads entering the terminal company's depot, to receive and check to destination personal baggage of passengers departing from the terminal depot over the railroad lines entering the terminal depot; and an unjust discrimination against some passengers *by the terminal company* in handling and checking baggage to destination *is alleged*. The terminal company is not required to issue baggage claim checks, but, by Order No. 739 of the Railroad Commissioners, the terminal company is required to check to destination the baggage of all passengers without discrimination, when the prescribed baggage claim checks are used and duly presented with a proper railroad ticket upon act-

ual receipt of the baggage by the terminal company. It does not appear that the terminal company refuses to receive into its baggage room any baggage presented by or for a prospective passenger.

If the principles of the common law do not forbid the unjust discrimination among passengers that is alleged to be practiced by the common carrier respondent in checking baggage to destination, such discrimination may be remedied pursuant to organic and statutory provisions, if there is in fact and in law an unjust discrimination affecting the public that is served by the respondent. Whether there is unjust discrimination depends upon the facts and the controlling provisions and principles of law.

The Jacksonville Terminal Company is not a mere agent or employee or contractual instrumentality of several railroad companies; but the terminal company is a distinct corporate legal entity that has been chartered pursuant to the laws of the State and is authorized by its charter to acquire property for the purpose and to furnish terminal facilities for railroads entering the city of Jacksonville, Florida. Such terminal facilities ordinarily include the rendering to the public of such passenger common carrier facilities and service as are appropriate and adequate in receiving, handling and checking the baggage delivered to the terminal company of all persons who are to be transported as passengers over any of the lines of railroad that enter the terminal company's depot, which facilities and service would otherwise be required by law to be furnished by the several railroad companies as a part of their duty as common carriers of passengers; and by statute all terminal or union depot companies are common carriers, and in rendering the service they are authorized to perform as common carriers, they are subject to supervision and regulation by the Railroad Commissioners, as provided by statute, pursuant to the organic pro-

vision on that subject.   Sec. 30, Art. 16, Constitution of 1885; Sec. 4614, Rev. Gen. Stats. 1920; Chap. 8469, Acts of 1921; Chap. 9308, Acts of 1923.   See statement preceding this opinion.

Even though the checks used by the terminal company in checking baggage to destination, are the checks of the railroad companies, the terminal company, a separate common carrier corporation, does the checking pursuant to authority conferred under the law, and the acts alleged in the alternative writ as constituting *unjust discrimination* are done by the terminal company and not by the railroad companies.

The terminal company is a separate common carrier corporation, chartered and authorized to do a terminal business for the railroads that enter its depot; and it is alleged that the terminal company is authorized to check baggage to destination and is in fact so doing; and it is alleged that the unjust discrimination complained of, is practiced by the terminal company, therefore it is not necessary or appropriate that the several railroad companies over whose lines baggage is checked by the terminal company, should be made parties respondent to the alternative writ.

The motion to quash the alternative writ was denied because the writ states an unjust discrimination as to passengers found by the Railroad Commissioners to exist, in that the terminal company honors, for the purpose of checking baggage to destination, the baggage claim checks issued to persons by one transfer company, *viz.*, the Jacksonville Baggage & Cab Company, but refuses to honor, for the purpose of checking baggage to destination, the baggage claim checks issued to persons by other transfer agents, "which practice actually results and operates as an unreasonable and unjust discrimination against persons or passengers sending their baggage to the Union Station of the Jacksonville Terminal Company

by persons or companies other than the Jacksonville Baggage & Cab Company.''

The Railroad Commissioners have prescribed a form of baggage transfer claim checks to be used by transfer agents, and require the terminal company to check to destination baggage that has been delivered to it with the prescribed transfer claim check thereon, upon presentation of the third stub of the check with a railroad ticket. See statement.

By answer the respondent in effect avers that the discrimination alleged is not illegal, unjust or unreasonable, because the Jacksonville Baggage & Cab Company by contract and bond secures the respondent terminal company against the risk of losses that may result from checking to destination baggage that may have been injured or lost in transfer from the passengers's home or hotel to the terminal depot, while other transfer agents afford no such indemnity, therefore respondent contends that the discrimination complained of is not illegal or unjust or unreasonable, but is a necessary and reasonable requirement for the protection of respondent's rights.

The alternative writ in effect commands the respondent to discontinue the practice complained of, and to honor all claim checks of the form prescribed issued by any and all transfer agents for the checking of baggage to destination, and relators move for a peremptory writ on stipulated facts shown in the statement.

The Constitution requires that unjust discrimination as well as excessive charges by common carriers be prevented. State *ex rel.* Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705; State *ex rel.* Railroad Com'rs. v. Atlantic Coast Line R. Co., 59 Fla. 612, 52 South. Rep. 4; State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 51 Fla. 578, 40 South. Rep. 875; 10 C. J. 471;

State *ex rel.* Railroad Com'rs. v. Florida East Coast R.
Co., 64 Fla. 112, 59 South. Rep. 385; State *ex rel.* Ellis v.
Atlantic Coast Line R. Co., 51 Fla. 543, 41 South. Rep. 529.

It is clear that under the statutes, as shown in the state-
ment, the Railroad Commissioners have authority to make
just and reasonable rules and regulations to be observed
by the terminal company in affording appropriate facili-
ties and accommodations to passengers using the terminals.
The statutory provisions necessarily include and are in-
tended to include authority to make reasonable and just
regulations respecting the receipt and handling and
checking to destination of baggage of passengers, and to
prevent unjust discriminations among passengers in re-
ceiving, handling and checking baggage. The terminal
company is subject to legal and appropriate orders, rules
and regulations duly promulgated by the Railroad Com-
missioners.

If it be true that no exactly similar case has heretofore
been adjudicated, the principles of the common law are in
force in this State when not in conflict with organic and
statute law; and the rules of the common law as well as
the statutes are designed for application to new conditions
and circumstances, as they may be developed by enlightened
commercial and business intercourse, that are within the
scope and remedial intent of existing provisions and prin-
ciples of law. The provisions and principles of law are
intended to be vitalized by practical utility, subject to
organic limitations.

One of the duties of a common carrier of passengers is
to receive and transport personal baggage of a passenger;
and a part of such duty is the furnishing of convenient
facilities for receiving, handling and checking baggage
without unjust discriminations that affect passengers. See
10 C. J. 1196. The terminal company performs some of

the duties of a common carrier and is by statute declared to be a common carrier.

It is the common law duty of common carriers to serve the public efficiently and impartially and without unreasonable discrimination in any respect, and no contract or practice to the contrary will relieve a carrier of the duty to serve the public without unjust discrimination. 10 C. J. p. 471; Sec. 746, p. 480; Sec. 762; State ex rel. Ellis v. Atlantic Coast Line R. Co., 51 Fla. 543, 41 South. Rep. 529; Indian River Steamboat Co. v. East Coast Transp. Co., 28 Fla. 387, 10 South. Rep. 480; State ex rel. Attorney General v. Atlantic Coast Line Ry. Co., 52 Fla. 646, 41 South. Rep. 705, 12 L. R. A. (N. S.) 506; Missouri, K. & T. R. Co. v. New Era Milling Co., 79 Kan. 435, 100 Pac. Rep. 273; 4 R. C. L. 567.

It appears that the respondent has a contract with a third party affecting the subject-matter of the order here sought to be enforced. That party was represented before the Railroad Commissioners when the hearing was had before the order was made, that is here sought to be enforced.

Any contract made, and any usage, custom or practice observed by a common carrier that has immediate relation to the duties of the carrier to its patrons among the public, though it may be binding as between the parties, is, under the Constitution and laws of this State, subject to lawful governmental rules and regulations of the business of the common carrier. See Sec. 30, Art. XVI, Fla. Const.; Southern Utilities Co. v. City of Palatka, 86 Fla. 583, 99 South. Rep. 236; Southern Utilities Co. v. City of Palatka, Fla., — U. S. —, 45 Sup. Ct. Rep. 488; City of Opelika v. Opelika Sewer Co. 265 U. S. 215,—Sup. Ct. Rep.—; Ortega Co. v. Triay, 260 U. S. 103; Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, 39 Sup. Ct. Rep.

117; Union Dry Goods Co. v. Georgia Public Service Corporation, 142 Ga. 841, 83 S. E. Rep. 946; Producers' Transp. Co. v. Railroad Commission of State of California, 251 U. S. 228, 40 Sup. Ct. Rep. 131; Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. Rep. 265; Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 39 Sup. Ct. Rep. 526; Englewood v. Denver & S. P. R. Co., 248 U. S. 294, 39 Sup. Ct. Rep. 100; City of San Antonio v. San Antonio Public Service Co., 255 U. S. 547; Paducah v. Paducah R. Co., 261 U. S. 267, 43 Sup. Ct. Rep. 335; Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705; State ex rel. Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61; State ex rel. Swearingen v. Railroad Commission of Florida, 79 Fla. 526, 84 South. Rep. 444; City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; Tampa Water Works Co. v. Tampa, 199 U. S. 241, 26 Sp. Ct. Rep. 23; State ex rel. Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; State ex rel. Ellis v. Tampa Water Works Co., 57 Fla. 533, 48 South. Rep. 639; Ortega Co. v. Triay, 260 U. S. 103, 43 Sup. Ct. Rep. 44; O'Keefe v. City of New Orleans, 273 Fed. Rep. 560; City of New Orleans v. O'Keefe, 280 Fed. Rep. 92; State v. City of New Orleans, 151 La. 24, 91 South. Rep. 92; State v. City of New Orleans, 151 La. 24, 91 South. Rep. 533; Milwaukee Electric Ry. & Light Co. v. Railroad Commission of Wisconsin, 238 U. S. 174, 35 Sup. Ct. Rep. 820; People ex rel. Village of South Glens Falls v. Public Service Commission, 225 N. Y. 216, 121 N. E. Rep. 777; City of Woodburn v. Public Service Commission of Oregon, 82 Oregon 114, 161 Pac. Rep. 391, L. R. A. 1917, 98; 28 C. J. 575. But this principle is confined to matters that directly and materially affect the public interests. See Arkansas Natural Gas Co. v. Arkansas Railroad Commission, 261 U. S. 379, 43 Sup. Ct. Rep. —; Schiller Piano Co. v. Illinois Northern Utilities Co., 288 Ill. 580, 123

N. E. Rep. 631, 11 A. L. R. See also Superior Water, Light N. E. Rep. 631, 11 A. L. R. 454. See also Superior Water, Light & Power Co. v. City of Superior, 236 U. S. 125. Sup. Ct. Rep. —. And a binding contract by a public utility com- relieved by the State in the interests of the public. See Columbus Ry. Light & Power Co. v. City of Columbus, Ohio, 249 U. S. 399, 39 Sup. Ct. Rep. 349, 6 A. L. R. 1648; Water, Light & Power Co. v. City of Hot Springs, S. D., 274 Fed. Rep. 827; Miami Gas Co. v. Highleyman, 77 Fla. 523, 81 South. Rep. 775; City of Cleveland v. Cleveland City R. Co., 194 U. S. 517, 24 Sup. Ct. Rep. 756; Knoxville Gas Co. v. City of Knoxville, 253 Fed. Rep. 217; Hillsdale Gas Light Co. v. City of Hillsdale, 258 Fed. Rep. 485; Knoxville Gas Co. v. City of Knoxville, 261 Fed. Rep. 283; Lenawee County Gas & Electric Co. v. City of Adrian, 209 Mich. 52, 176 N. W. Rep. 590, 10 A. L. R. 1328; City of Moorhead v. Union Light, Heat & Power Co., 255 Fed. Rep. 920; 28 C. J. 579; Southern Utilities Co. v. City of Palatka, 86 Fla. 583; 99 South. Rep. 236; Southern Utilities Co. v. City of Palatka, Fla.,—U. S.—, 45, Sup. Ct. Rep. 488. And a public utility company may enforce a binding contract in its favor. See Detroit United Ry. v. People of State of Michigan, 242 U. S. 238, 37 Sup. Ct. Rep. 87; City of Min- neapolis v. Minneapolis St. R. Co., 215 U. S. 417, 30 Sup. Ct. Rep. 118; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 Sup. Ct. Rep. 762; Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 22 Sup. Ct. Rep. 410. But there must be a binding contract that is not forbidden by any provision of controlling law. Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, 65 L. Ed. 764, 41 Sup. Ct. Rep. 400; City of San Antonio Public Service Co., 255 U. S. 547, 65 L. Ed. 777, 41 Sup. Ct. Rep. 428; City of Houston v. Southwestern Bell Telephone Co., 259 U. S. 318, 66 L. Ed. 961, 42 Sup. Ct. Rep. 486; City of Lead v. Western. Gas & Fuel Co., 44 S. D. 510, 184 N. W. Rep. 244, text 246;

State v. City of New Orleans, 151 La. 24, 91 South. Rep.
533; O'Keefe v. City of New Orleans, 273 Fed. Rep. 560;
City of New Orleans v. O'Keefe, 280 Fed. Rep. 92; City
and County of Denver v. Stenger, 277 Fed. Rep. 865; Ope-
lika Sewer Co. v. City of Opelika, 280 Fed. Rep. 155; Lena-
wee County Gas & Electric Co. v. City of Adrian, 209 Mich.
52, 176 N. W. Rep. 590, 10 A. L. R. 1328.

It may be that most of the baggage affected by the order
is for interstate transportation, but it is not contended and
it does not appear that Congress has enacted or authorized
any regulations in the premises, or that the order will in
any way burden interstate commerce, therefore the State
may by reasonable and just regulations exert its govern-
mental power in the premises until Congress acts.  State
ex rel. Burr v. Atlantic Coast Line R. Co., 77 Fla. 366, 81
South. Rep. 498; Sligh v. Kirkwood, 65 Fla. 123, 61 South.
Rep. 185; Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. Rep.
501; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. Rep. 715;
Minnesota Rate Cases (Simpson v. Shepard), 230 U. S. 352,
33 Sup. Ct. Rep. 729; Mobile County v. Kimball, 102 U. S.
691; Northern Pac. R. Co. v. State of Washington ex rel.
Atkinson, 222 U. S. 370, 32 Sup. Ct. Rep. 160; Southern R.
Co. v. Rid, 222 U. S. 424, 32 Sup. Ct. Rep. 140; Stockton v.
Powell, 29 Fla. 1, 10 South. Rep. 688; Pennsylvania Co. v.
United States, 236 U. S. 351, 35 Sup. Ct. Rep. 370; Wil-
mington Trans. Co. v. R. R. Commission of Cal. 236 U. S.
151.

Orders, rules and regulations of the Railroad Commis-
sioners are administrative in their nature, and though they
are by statute made *prima facie* reasonable and just, yet to
be enforced by the courts when violated, they must be
within the scope and intent of the authority conferred by
statute, must be in accord with applicable organic provi-
sions and limitations, and must be reasonable and just with
reference to all rights materially affected thereby.  Such

orders, rules and regulations are not final adjudications, and they are subject to appropriate judicial review for the protection of organic or substantial rights. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; State *ex rel.* Railroad Com'rs v. Southern Tel. & Const. Co., 65 Fla. 270, 61 South. Rep. 506; Wadley Southern R. Co. v. State of Georgia, 235 U. S. 651, text 660, 35 Sup. Ct. Rep. 214.

"The liability of a common carrier as such for the baggage of a passenger commences with the delivery of such baggage to, and the express or implied acceptance by, the carrier, and not before." 10 C. J. p. 1215; 5 R. C. L. 188; 5 Elliot on Railroads; §2516; Cone v. Southern Railway Co., 85 S. C. 524, 67 S. E. Rep. 779, 21 Ann. Cas. 158.

In some cases special concessions may lawfully be allowed transfer agents by common carriers of passengers. See Donovan v. Pennsylvania Co. 199 U. S. 279, 26 Sup. Ct. Rep. 91; Dingman v. Duluth, South Shore & Atlantic Ry. Co., 164 Mich. 328, 130 N. W. Rep. 24, 32 L. R. A. (N. S.) 1181; Oregon Short Line R. Co. v. Davidson, 33 Utah 370, 94 Pac. Rep. 10, 16 L. R. A. (N. S.) 777; *contra*, Indianapolis Union Ry. Co. v. Dohn, 153 Ind. 10, 53 N. E. Rep. 937, 45 L. R. A. 427; State v. Reed, 76 Miss. 211, 24 South. Rep. 308; yet such privileges will not be permitted to be so exercised as to cause unjust discrimination affecting passengers. Kates v. Atlanta Baggage & Cab Co., 107 Ga. 636, 34 S. E. Rep. 372, 46 L. R. A. 430. See authorities cited in 10 C. J. 657 *et seq.;* Thompson's Express & Storage Co. v. Mount, 91 N. J. Eq. 497, 111 Atl. Rep. 173, 15 A. L. R. 351; Hedding v. Gallagher, 72 N. H. 377, 57 Atl. Rep. 225, 64 L. R. A. 811.

While the right to the management and control of the property of common carriers is inherent in the carriers who own or operate the property (State *ex rel.* Railroad Com'rs v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 South. Rep.

394), yet, because of the nature of the service rendered and the immediate interest of the public therein, supervision and regulation of the operation and of the business done as common carriers are within the powers of the State as to intrastate business when lawful Federal authority is not dominant (Houston & W. T. R. Co. v. United States, 234 U. S. 342, 34 Sup. Ct. Rep. 833; American Exp. Co. v. State of South Dakota *ex rel.* Caldwell, 244 U. S. 617, 37 Sup. Ct. Rep. 656; Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U. S. 563, 42 Sup. Ct. Rep. 232, 193 U. S. 53), and this governmental supervision and regulation may be lawfully exerted through administrative officers and commissions or boards when they are validly constituted, and their governing powers and duties in the premises are legally defined and limited by duly enacted statutes. Atlantic Coast Line R. Co. v. North Carolina Corp. Commission, 206 U. S. 1, 27 Sup. Ct. Rep. 585; McWhorter v. Pensacola & A. R. Co., 24 Fla. 417, 5 South. Rep. 129. In view of the nature of the service rendered and its relation to the public, which justify governmental regulation in the public interest, the burdens to the carrier that are incident to lawful governmental supervision and regulation to conserve the public welfare, do not deprive the carrier of property rights without due process of law. State *ex rel.* Railroad Com'rs v. Florida East Coast Ry Co., 57 Fla. 522, 49 South. Rep. 43. But when mere convenience of the public is the sole consideration, unreasonable regulations that are clearly more burdensome to the carrier than they are correspondingly beneficial to the public. are not contemplated by the law; and the property rights of the carrier are protected by organic law from burdens that are not necessary to personal safety and have no fair relation to, or are in excess of just requirements for, a reasonably efficient, nondiscriminating public service. See State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 71 Fla. 433, 71 South. Rep. 543;

VOL. 90, JUNE TERM, 1925.          751

State ex rel. Burr et al. v. Jacksonville Terminal Co.—Opinion of Court.

State *ex rel.* v. Atlantic Coast Line R. Co., 77 Fla. 366, 81
South. Rep. 498; Louisville & N. R. Co., v. Burr, 63 Fla.
491, 58 South. Rep. 543, 44 L. R. A. (N. S.) 189; 22 R. C.
L. 780.

The law making department of the State may by statute
authorize an administrative officer or board to determine
facts in making and enforcing administrative regulations,
and such determination may by statute be made *prima facie*
reasonable and just (Goldstein v. Maloney, 62 Fla. 198, 57
South. Rep. 342; Mobile, J. & K. C. R. Co. v. Turnipseed,
219 U. S. 35, 31 Sup. Ct. Rep. 136; Lindsley v. Natural Car-
bonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337; Luria v.
United States, 231 U. S. 9, 34 Sup. Ct. Rep. 10) ; but such
determination cannot be made conclusive upon the courts,
when duly contested in appropriate proceedings; and an
order unsupported by evidence is invalid.   Florida East
Coast R. Co. v. United States, 234 U. S. 167, 34 Sup. Ct.
Rep. 867; Akron, C. & Y. Ry. Co. v. United States, 261
U. S. 184, 43 Sup. Ct. Rep. 270; State *ex rel.* Railroad
Com's v. Florida East Coast R. Co., 64 Fla. 112, 59 South.
Rep. 385; Interstate Commerce Commission v. Louisville &
N. R. Co., 227 U. S. 88, 33 Sup. Ct. Rep. 185; 25 Fla. 310;
77 Fla. 366; 264 U. S. 171; 236 U. S. 430; 258 U. S. 1; 243
U. S. 210, 214; Ann. Cas. 1916 B 691; Ann. Cas. 1912 A
463.

The Railroad Commissioners have only such powers as
are conferred by the express and implied provisions of the
statutes.   State v. Atlantic Coast Line R. Co., 56 Fla. 617;
47 South. Rep. 387; State Public Utilities Commission of
Illinois v. United States, 245 U. S. 493, 38 Sup. Ct. Rep.
170; State *ex rel.* Railroad Com'rs v. Louisville & N. R.
Co., 57 Fla. 526, 49 South. Rep. 39.   If they proceed with-
out authority, their act is invalid and will not be enforced.
State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 56
Fla. 526, text 527, 49 South. Rep. 39; State *ex rel.* Burr v.

Jacksonville Terminal Co., 71 Fla. 295, 71 South. Rep. 474; Illinois Cent. R. Co. v. State Public Utilities Commission of Illinois, 245 U. S. 493, 38 Sup. Ct. Rep. 170.

The statute provides that every regulation made by the Railroad Commissioners shall be deemed and held to be reasonable and just, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence. This requires the court to determine whether asserted invalidity or error in a particular regulation is clearly made to appear. Where there is substantial evidence to sustain the regulation and no rule of law is violated by the regulation the courts will in general enforce it. But as a matter of organic law the making of such regulations is not conclusive of their validity; and where a regulation is promulgated without substantial evidence to support it, or in violation or disregard of controlling provisions or principles of law to the injury of fundamental rights, or its practical operation would be essentially unreasonable or unjust to those affected by it, the courts will not enforce it. State ex rel. v. Atlantic Coast Line R. Co., 77 Fla. 366, text 377, 81 South. Rep. 498; State ex rel. Railroad Com'rs v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385; State ex rel. Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 165, 67 South. Rep. 906; State ex rel. Burr v. Atlantic Coast Line R. Co., 71 Fla. 102, 70 South. Rep. 941; State ex rel. Railroad Com'rs v. South Georgia R. Co., 80 Fla. 369, 85 South. Rep. 663; State ex rel. Burr v. Tavares & G. R. Co., 78 Fla. 329, 82 South. Rep. 833; State ex rel. Ellis v. Atlantic Coast Line R. Co., 51 Fla. 578, 40 South. Rep. 875; Philadelphia & A. R. R. Co. v. Allentown Portland Cement Co., 240 U. S. 334, 36 Sup. Ct. Rep. 354; State ex rel. Burr v. Seaboard Air Line Ry. Co., — Fla. —, 104 South. Rep. 602; State v. Fairchild, 224 U. S. 510, 32 Sup. Ct. Rep. 535; Manufacturers' R. Co. v. United Sates, 246 U. S. 457, 38 Sup. Ct. Rep. 383.

Unreasonable regultaions are not within the authority conferred by law upon the Railroad Commissioners, and when it appears from the pleadings or the evidence in a case that an order or regulation is unreasonable, or unjust with reference to all the substantial interests affected by it, or is violative of constitutional provisions for the protection of property rights, such regulations will not be enforced by the courts. State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 69 Fla. 165, 67 South. Rep. 906; State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175.

Orders of the Railroad Commissioners requiring particular depot and transfer facilities to be furnished for the convenience, not for the safety, of patrons, will not be enforced by mandamus when the burden to the carrier would be so out of proportion to the benefits to accrue to the public as to show the orders to be unreasonable and unjust. State *ex rel.* v. Atlantic Coast Line R. Co., 77 Fla. 366, 81 South. Rep. 498.

The law is designed "to prevent *unjust* discrimination," by those rendering public service and does not forbid just discriminations that are incident to the protection of organic rights. Sec. 30, Art. XVI, Const. Par. 4, Sec. 4618, Rev. Gen. Stats. 1920; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385; United States v. Illinois Cent. R. R. Co., 263 U. S. 515, — Sup. Ct. Rep —; Manufactures Ry. Co. v. United States, 246 U. S. 457, 38 Sup. Ct. Rep. 383; 10 C. J. 473; United States v. Wells-Fargo Express Co., 161 Fed. Rep. 606. In determining whether a practice of a common carrier is unjustly discriminating as to passengers "the rights of the carrier are to be considered together with other facts and circumstances affecting the subject." State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 64 Fla. 112, 59 So. 385.

There is no statute defining as a duty the checking of baggage to destination that is the subject of the order of the Railroad Commissioners here sought to be enforced. While the general powers conferred upon the Railroad Commissioners clearly authorize orders designed to remedy unjust discriminations in the handling and checking of baggage after it is delivered to the terminal company to be forwarded over a railroad as an incident to passenger transportation, yet, in the present state of the law, even if the Railroad Commissioners have the authority to prescribe the form of baggage checks that may be used by baggage transfer agents in delivering baggage to the terminal company, the order made in this case by the Railroad Commissioners is without a sufficient predicate in *unjust* discrimination, since it does not appear that the terminal company unreasonbly refuses to take indemnity from other transfer agents or that the terminal company acts unlawfully or unreasonably in declining to check baggage to destintaion without identification of the baggage by the owner, or without a baggage claim check issued by the terminal company, where such baggage is delivered to the terminal company by other baggage transfer agents than the Jacksonville Baggage and Cab Company. It appears that torts and abuses may easily occur in the transfer of baggage in the city and that the Jacksonville Baggage and Cab Company is under contract and gives bond to indemnify the terminal company against errors or torts in the delivery of baggage by the baggage company to the terminal company for railroad transportation; and it does not appear that others engaged in the transfer of baggage from homes and hotels and other places to the terminal station, have unlawfully and unreasonably been by the terminal company, denied equal or similar privileges upon equal or similar terms with the Jacksonville Baggage and Cab Company; therefore, no unlawful or unjust discrimination by the terminal Company between pas-

sengers seeking to check baggage, appears in the mere refusal to check baggage to destination without identification of the baggage by the owner thereof or without a terminal claim check, when the baggage is delivered to the terminal company for the owner by other baggage transfer agents than the Jacksonville Baggage and Cab Company, the latter company alone having indemnified the terminal company against risk of loss arising from the delivery of substituted or injured baggage. If inconvenience to those who do not patronize the Jacksonville Baggage and Cab Company, or a monopoly for the Jacksonville Baggage and Cab Company, results, it apparently is not remediable by the Railroad Commissioners unless others may qualify to indemnify the terminal company against loss, as has the Jacksonville Baggage and Cab Company, or unless a specific and appropriate statute may lawfully control the subject. Local transfer agents are not a part of any system of connecting carriers as to which the Railroad Commissioners have statutory authority; and the Railroad Commissioners have no power by regulations affecting the public service of the terminal company or otherwise to in effect make local transfer agents the agents of the terminal company or of the railroads entering the terminal station.

The right of the terminal company to protect itself against the delicts of irresponsible transfer companies or persons who deliver to the terminal company the baggage of prospective passengers cannot lawfully be wholly denied, though the exercise of such right may be reasonably regulated by due course of law particularly as it affects the duties of the terminal company to its traveling patrons.

The service rendered the public who employ the Jacksonville Baggage and Cab Company as a transfer company is accessorial in its nature and one which the law does not require a common carrier to perform. The law does not require the carrier to accept any transfer agent's claim

or identification check as the basis for the issuance by the carriers of a baggage check to destination. The agreed statement of facts shows that the terminal company accepts the Jacksonville Baggage and Cab Company's identification check when presented at the counter with the railroad ticket and issues thereon the railroad baggage check to destination without requiring anything more of the passenger, who thus gets prompt and immediate service. In so doing, the terminal company is protected by its contract with such baggage and cab company, and the latter's indemnifying bond to secure the faithful performance of its contract. This results in the extension of a service through a responsible contractor which ministers to the convenience of the traveling public, but which the carrier is not required to extend indiscriminately through any and every drayman or transfer agent that a passenger might engage, and which service the law does not require. Kates v. Atlanta Baggage & Cab Co., 107 Ga. 636, 34 S. E. Rep. 372, 46 L. R. A. 431.

Even if the Railroad Commissioners have authority to prescribe the form of "baggage transfer claim checks" that may be used by baggage transfer agents, over which transfer agents the commissioners have no authority, yet it is not clear the terminal company may lawfully be required to check baggage to destination "upon presentation to it by the passenger of the third or baggage claim stub of said baggage claim check, accompanied by a proper railroad ticket," without identification of the baggage by the passenger, if the terminal company so demands, because the baggage transfer agent is the passenger's agent, and if the transfer agent is irresponsible the baggage delivered to the terminal company might not be the same that was delivered to the transfer agent, or the baggage might not be in the same condition as when

delivered to the transfer agent; and if the terminal company is not willing to take the risks of checking baggage to destination without identification, an order requiring the unwilling assumption of risk is an attempt to force upon the terminal company the risk of a liability that might in effect deprive it of its property rights without due process of law.

The baggage transfer agent, an independent contractor, is the passenger's agent and is in no sense the agent of the terminal company. Possession by the passenger of the third stub of the proposed "baggage transfer claim check" may be evidence of the receipt of baggage by the passenger's transfer agent; but such stub cannot, at least without the consent of the terminal company, lawfully be made evidence that the baggage as received from the passenger by his transfer agent has been delivered to the terminal company, the transfer agent not being the agent of the terminal company.

The "second or middle stub" of the proposed "Baggage Transfer Claim Check" provides for a notation thereon of "Gross Weight" and of "Condition of baggage when received by Terminal Company"; but this does not identify the baggage that was delivered by the passenger to the transfer agent; and when applying for a cehck to destination even if the passenger could be and is required to acquiesce in the notations made on the second or middle stub that is required to be placed "with the checking clerk at the baggage checking counter," such notations and acquiescence may not protect the terminal company from an action for damages if the baggage delivered to the transfer company and checked to destination was not the same baggage and in the same condition as received by the transfer agent from the passenger. In an action for damages for loss of or injury to baggage carried by a

baggage transfer agent, the terminal company after check-
ing baggage to destination might be unable to prove the
real nature of the baggage as received by it; and if it
could not prove that the loss of or injury to baggage
occurred prior to the receipt of the baggage by the terminal
company, liability to the passenger might result from is-
suing a check to destination, the terminal company being
an independent company liable for its own acts and as
the agent of the several railroads. Hence the requirement
to identify baggage when indemnity is not afforded.

The form of the "Baggage Transfer Claim Check" pre-
scribed by the Railroad Commissioners is not evidentiary
protection to the terminal company as to the identity of
the baggage received. When the terminal company issues
its baggage claim checks to transfer agents, the terminal
company assumes risks as to the identity of the baggage
received and delivered by the transfer agent. Baggage
delivered to the terminal company by passengers in per-
son is identified by the delivery.

It is suggested that as the transfer agent is the agent
of the passenger and not the agent of the terminal com-
pany or of the railroads entering the terminal station, and
as the terminal company is liable only for the baggage
that is actually received by the terminal company, it does
not concern the terminal company or the railroads whether
the baggage that was delivered by the prospective pas-
senger to the transfer agent was or was not appropriated
by substitution or was or was not injured or some of its
contents extracted before delivery to the terminal com-
pany, and that consequently indemnity from the transfer
agent is not essential to protect the rights of the terminal
company, which makes the discrimination by the terminal
company, in checking baggage to destination upon the
claim checks issued to passengers by the Jacksonville

Baggage and Cab Company and in refusing to check baggage to destination upon the claim checks issued to passengers by other transfer agents, unjust and unreasonable and therefore unlawful.

This might and might not be true as to the ultimate liability of the terminal company in recoverable damages, if the terminal company is afforeded the means of proving its freedom from liability, but it imposes upon the terminal company liability to suits and incidental burdens that would be avoided by identification of baggage after its delivery to the terminal company; and even if the Railroad Commissioners have statutory authority to impose this added risk of liability to suit and its incidental burden, and if the imposition of such burden, in view of the rules of evidence imposed by law upon common carriers, is not in effect a deprivation of a property right without due process of law, in violation of the State and Federal Constitutions, the burden to the terminal company on the showing made by this record is manifestly and materially out of proportion to the benefits of mere convenience to accrue to passengers by the imposition of the added risks on the terminal company. This goes to the reasonableness of the order. State of Washington *ex rel.* Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. Rep. ·535; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 165, 67 South. Rep. 906; State *ex rel.·* Burr v. Atlantic Coast Line R. Co., 71 Fla., 102, 70 South. Rep. 941; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 71 Fla. 433, 71 South. Rep. 543; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 165, 67 South. Rep. 906; State *ex rel.* v. Atlantic Coast Line R. Co., 77 Fla. 366, 81 South. Rep. 498.

The terminal company does check baggage to destination upon presentation of a proper railroad ticket and a

baggage claim check issued by the Jacksonville Baggage and Cab Company because by contract and bond the terminal company is indemnified against loss caused by that particular transfer agent. As to other baggage transfer agents the terminal company has no indemnity against losses from delicts in transferring baggage to the terminal station.

It does not appear that the Jacksonville Baggage and Cab Company charges more for transfer service than do other transfer agents, if that is material in this case. Prospective passengers who deliver their own baggage to the terminal company are given claim checks presumably without delay, and on such claim checks and a railroad ticket the baggage is checked to desination without further identification.

The terminal company issues its claim checks to all persons or transfer agents who deliver baggage at the baggage room of the company at the time of such delivery, and on this claim check the baggage will be checked to the point called for by a railroad ticket. Presumably the terminal company in such cases satisfies itself as to the identity and condition of baggage for which its baggage claim checks are issued and assumes the risks of loss if any. It could not be compelled to so issue its claim checks and assume liability without being so satisfied. There is no contention that the terminal company so issues or uses *its* baggage claim checks as to practice unjust discrimination affecting passengers; or that the terminal company practices discrimination in receiving and handling baggage except in checking baggage to destination as above stated.

The terminal company is liable for the baggage it receives and checks; and it has a right to protect itself against the risk of liability to suit for loss of or damage to baggage that in fact is caused by the wrong doing of

irresponsible transfer agents who, during the transfer, substitute baggage of little or no value for the baggage of great value that was received by the transfer agent from the prospective passenger or injures or pilfers the baggage received from its owner before it is delivered to the terminal company to protect itself against the risk of liability resulting from the substitution of or injury to baggage after it is received by a transfer company or agent from its owner and before it is delivered to the terminal company to be checked to destination on a line of railroad, the terminal company does not check to destination, without identification by its owner, or without a claim check issued by it, any baggage except upon a baggage claim check issued to the passenger by the Jacksonville Baggage and Cab Company, which company alone has by contract and bond indemnified the terminal company against loss or damage to any baggage handled by it or by its use of claim checks. The result is that the prospective passengers who engage the Jacksonville Baggage and Cab Company to transfer their baggage to the terminal station, are not required to identify their baggage at the station before it will be checked to destination by the terminal company, while those who employ other agents to transfer their baggage to the terminal station, are required to identify their baggage in the baggage rooms, or to wait for and secure from their transfer agent and present a claim check issued by the terminal company on delivery of the baggage at its baggage room, before the baggage will be checked to destination by the terminal company. The incidental inconvenience to the passengers who do not employ the bonded transfer agent and consequently have to identify their baggage, or wait for the delivery of the terminal company's claim check, it not an *unjust* discrimination against such passengers, because as the law now is on the facts appearing in this record, the baggage transfer agents

are not agents of the terminal company and the terminal company may reasonably require all persons who send baggage to the terminal station by their own transfer agents, to identify their baggage before it is checked to destination; and it is not unlawful for the terminal company to waive identification only where it is indemnified against loss, when the terminal company does not unlawfully or unjustly discriminate in taking indemnification from responsible transfer agents.

The holding in this case does not conflict in principle with the decisions on the facts shown in cases cited for the relators.

Peremptory writ denied.

TERRELL, STRUM AND BROWN, J. J. concur.

ELLIS, J., dissents.

ELLIS, J., dissenting.

When this cause was first presented upon a motion to quash the alternative writ the motion was granted because it was held that the alternative writ did not allege that the Terminal Company was authorized by its charter to issue baggage claim checks to baggage transfer agents nor that the company was authorized as agent of the railroad companies to check baggage to its destination or that it was in fact doing either one of those things. Therefore a right to the mandatory writ as framed did not appear. See State ex rel. Burr et al. v. Jacksonville Terminal Company, et al., 82 Fla. 255, 89 South. Rep. 641.

There was a dissenting opinion in that case which rested upon the proposition that the argument in support of the majority opinion was fallacious because it established a

proposition not related to the question presented, which the dissenting opinion stated to be: whether the State had the power to prevent the Terminal Company from discriminating between prospective passengers, whose baggage has been received by the company for transportation over the line of a railroad company using the terminal facilities, in the matter of the facilities afforded for the identification of such baggage by the owner, and to require the establishment of a system by the Terminal Company that would secure to all persons alike equal facilities in that regard.

If that was the question presented by the alternative writ it is perfectly obvious that it was no solution of the question to say that the Terminal Company was not authorized by its charter to issue baggage checks to baggage transfer companies, nor by its charter or agreement with the railroads to check baggage to its destination.

A petition for rehearing was denied upon the same reasoning by which the majority opinion was supported.

The fallacy was the well known material fallacy of the irrelevant conclusion.

It is true that the order incidentally required the Terminal Company to issue to "all persons and companies duly licensed by law to do a transfer business in the City of Jacksonville, Florida," triplicate stub form baggage claim checks in serial numbers, after a form prescribed in the order, and that upon the presentation by a passenger of a proper railroad ticket and a "duplicate claim check bearing the same number" as contained on the tag or check attached to the parcel and middle stub held by the checking clerk the company should, without further identification of baggage, check such baggage to its destination.

Now, if the relator was not entitled to have the order enforced as a whole, that is to say in its entirety, the writ should not have issued. See State *ex rel.* v. Florida Coast

Line Canal & Transportation Co., 73 Fla. 1006, 75 South. Rep. 582.

But an alternative writ of mandamus may be amended. See State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South Rep. 213, 13 L. R. A. (N. S.) 320 n, 12 Ann. Cas. 359.

But as the furnishing of ''Triplicate stub form baggage claim checks'' by the Terminal Company to baggage transfer companies is merely incidental to the real or principal purpose sought by the order, and as the practice of the company in issuing railroad baggage checks to passengers on authority of the railroads using the terminal station was alleged in the alternative writ and admitted by the motion to quash, it is apparent that the judgment quashing the writ rested upon an irrelevant proposition which could in no wise affect the merits of the principal question.

So even if it was considered that the Terminal Company was not authorized by its charter to issue baggage claim checks to transfer agents the determination of that point did not in any degree determine the principal question. So instead of quashing the writ an order should have been entered allowing an amendment of it.

Later another order was made by the Railroad Commissioners numbered 739 eliminating the objectionable feature as found by this Court to exist in the first order and dealing with the main or principal proposition only, that is to say, requiring the Terminal Company to establish a system, prescribed in the order, for the receipt of the baggage of passengers and the means of easy and convenient identification of the same by the owners thereof when they desire a railroad baggage check to destination.

Based upon that order an alternative writ of mandamus was issued by the Court against the Jacksonville Terminal Company upon the petition of the Railroad Commissioners.

The company made a return in which, among other things, it was averred that it had an arrangement or contract with the Jacksonville Baggage and Cab Company under which baggage claim checks used by that Company were recognized by the Terminal Company for identification purposes but denied that the system, used only with the particular transfer company, amounted to a discrimination against persons who were prospective passengers upon the railroads using the terminal facilities and who did not hold such transfer company's baggage checks.

Much was averred in the return about the special arrangement which the Terminal Company had with the particular transfer company. That it was at once a source of revenue to the Terminal Company and afforded to the traveling public an additional convenience and protection to it from the loss or damage to its baggage while in the hands of the transfer company.

The case was submitted upon an agreed state of facts in which it was admitted: That the Terminal Company in operating the Union passenger depot sells railroad tickets and checks baggage; makes up trains for departure; unmakes trains which have arrived; transports the baggage of passengers, which has been checked, from the baggage room to departing trains; stores outgoing baggage after the same has been received in the baggage room and until it is checked for railroad transportation to point of destination; and receives and stores baggage from prospective passengers, or their agents who send or bring their baggage to the depot, making a storage charge for excess time of storage and in the "case of baggage received which has applied to it the claim check or identification check used by Jacksonville Baggage & Cab Company, Jacksonville Terminal Company will recognize such iden-

tification of such baggage and upon presentation and surrender of a duplicate stub of the check applied to such baggage by Jacksonville Baggage & Cab Company, together with railroad ticket as hereinafter provided; it will issue a railroad check for the transportation of baggage to destination and for identification of such baggage at destination.''

. It was agreed that the Jacksonville Terminal Company would not render that service to any other prospective passenger holding a railroad ticket but having the ''claim check of any other company or person than the Jacksonville Baggage & Cab Company even though such baggage may be in the baggage room at the time such claim check, together with a passenger's railroad ticket, is presented,'' but it would require the identification of the baggage as prescribed by its rules.

It was also agreed that the Terminal Company is duly authorized to check passengers' baggage to destination and in doing so it uses railroad baggage checks furnished by the respective railroads.

The basis of the Railroad Commission's order is the proposition that the rules prescribed by the Terminal Company for the identification of baggage by passengers who do not hold a baggage transfer check issued by the Baggage & Cab Company named, subject passengers to an inconvenience which the Terminal Company by its arrangement with the Baggage & Cab Company prevents and avoids in other cases.

The finding of this fact by the Railroad Commissioners establishes its *prima facie* verity. There is nothing in this record which refutes it.

Therefore two propositions are involved. First: The State has the power to prevent the Terminal Company from practicing such discrimination between prospective

passengers whose baggage has been received by the company for transportation over the line of a railroad company using and employing the Terminal Company's facilities, and to require the establishment of a system by the Company that will secure to all persons alike equal facilities in the matter of the identification of baggage for checking to destination. This proposition would seem to require no proof.

Second: The powers of the Railroad Commission are broad enough under the Statute to include the authority to make reasonable regulations respecting the handling of baggage belonging to prospective railroad passengers by the Terminal Company and providing a reasonable system for its safe-keeping and convenient identification by its owners after it has been received by the Terminal Company.

This proposition is not disputed either in the pleadings or in the majority opinion nor indeed does any basis exist in the statute for the support of such denial.

Whether the inconvenience to which the Terminal Company subjects one class of passengers in the matter of the identification of baggage, which it avoids and from which it saves and protects another class, is such a discrimination which the relators may by reasonable regulations prevent would seem to be a matter lying within the judgment of the relators under the statute.

It is no argument to the point that railroad companies may discriminate between baggage transfer companies within certain degrees, such as extending special privileges of soliciting to some such companies which they deny to others, because such conclusion is irrelevant. For the same reason it is no answer that the Terminal Company, in the case of the favored Baggage Transfer Company, has by a special arrangement with that company secured to

persons who employ that company to transfer their baggage to the depot the additional or accessorial service of relieving the owner of the baggage from loss or damage while being carried by the transfer company from the hotel or home to the depot under which the Terminal Company receives a remuneration from the baggage company and that the Terminal Company has made no such arrangement with other transfer companies or persons.

It is no answer because the subject of the order is not an accessorial service. It is a service which the Terminal Company as a common carrier owes to the public; the service of safely keeping and of providing equal facilities for the identification of baggage. Within that field the relators may operate and it is in that field only have they entered.

The general propositions announced in the majority opinion in which numerous authorities are cited are not questioned; but to the writer they seem to be in support of a conclusion which has no relation to the point involved in this controversy.

The system prescribed in order Number 735 of the relators does not appear to be such a burden upon the Terminal Company as to be out of proportion to the benefits to accrue to the public from the system. The Terminal Company finds no burden in the system as it is practiced with the Baggage & Cab Company. The remuneration which the Terminal Company receives is for the assumption of the risk of loss of baggage while being transported by the baggage company in the city. That is an accessorial service which the Terminal Company is not required to undertake by order.

The checking of baggage by a carrier is a duty which it owes to the passenger by reason of the contract of passage. That duty the Terminal Company performs for

the carriers, but the keeping of the baggage and the facilities provided for convenient identification of it by the owners is a service which the Terminal Company performs while custodian of the baggage for the carriers.

I think there has been no showing that the order is unreasonable or made without the limits of authority. It is therefore, under the statute, valid and should be deemed to be reasonable and just, the contrary not plainly appearing.

Peremptory writ should be awarded.